LABOR RELATIONS COMMISSION & another [1] vs. UNIVERSITY HOSPITAL, INC.

Suffolk. November 3, 1970. — May 13, 1971.

Present: TAURO, C.J., SPALDING, REARDON & QUIRICO, JJ.

Labor. Hospital. State Administrative Procedure Act. Constitutional Law, Due process of law, Freedom of speech and press.

On a petition under G. L. c. 150A, § 6 (e), as amended by St. 1954, c. 681, § 10, the court must test the validity of an order of the Labor Relations Commission by whether on the record before the commission the order is supported by "substantial evidence" as defined in c. 30A, § 1 (6); the court must not treat the proceeding as a trial de novo on the record before the commission. [521]

The record of a proceeding before the Labor Relations Commission under G. L. c. 150A, § 5 (b), as amended through St. 1964, c. 576, § 5, relative to a large hospital showed to be valid the commission's establishment

———

[1] The other party to this case is the Building Service Employees International Union, Local 254, AFL–CIO, an intervener.

as an appropriate collective bargaining unit of about forty of the hospital's "skilled tradesmen in the Maintenance Department," and exclusion from such unit, over the hospital's objection, of additional employees in the maintenance department and "all the hourly rated employees . . . regardless of what department" they worked in; the commission was not bound by the existing organization and personnel policies of the hospital, nor by decisions of administrative boards of other jurisdictions faced with a similar problem. [523–524]

Where it appeared in a proceeding under G. L. c. 150A, § 6 (e), that to the knowledge of an employer the Labor Relations Commission on a certain date established as an appropriate collective bargaining unit certain employees in the maintenance department of the employer and ordered that an election be held by the unit for the selection of its bargaining representative, that thirteen days after that date the commission notified the employer that the election had been postponed to a date six days after such notice, and that in the six days period the employer communicated with the employees of the unit without interference from the commission, it was held that there was no merit in the employer's contention that the shortness of the nineteen days period denied it due process of law and freedom of speech, notwithstanding the fact that its counsel was unable to be present at the election because of a conflicting engagement. [524–525]

PETITION filed in the Superior Court on September 18, 1969.

The case was heard by *Hudson, Kalus,* and *Hennessey,* JJ.

*George H. Foley* for University Hospital, Inc. (*John F. Dunn* for Massachusetts Hospital Association, amicus curiae, with him).

*Joseph A. Furnari,* for the State Labor Relations Commission.

*Robert F. Muse* for the intervener, Building Service Employees International Union, Local 254 AFL-CIO.

QUIRICO, J. This is a petition brought by the Labor Relations Commission (Commission) under G. L. c. 150A, § 6 (e), as amended by St. 1954, c. 681, § 10, for the enforcement of an order previously issued by it against University Hospital, Inc. (hospital). The case is before us on the appeal of the hospital from a final decree entered by a three judge panel of the Superior Court granting the relief sought by the Commission. G. L. c. 212, § 30, inserted by St. 1959, c. 600. We summarize the pertinent facts leading up to the filing of the petition in the Superior Court.

On October 8, 1968, the intervener (union) filed with the Commission a petition under G. L. c. 150A, § 5 (c), asking that it be certified as the collective bargaining representative for about forty of the hospital's maintenance employees. The Commission held a hearing on the petition at which the hospital requested that the proposed bargaining unit (unit) be enlarged so that it would also include (a) about twenty-nine maintenance employees not included in the petition of the union, (b) 276 dietary section employees, (c) sixty-nine housekeeping department employees, (d) eighty-one nursing service nonprofessional employees, and (e) an unspecified number of employees in miscellaneous departments.

On February 14, 1969, the Commission, in a written decision, established a unit consisting of forty of the hospital's "skilled tradesmen in the Maintenance Department." The unit included journeymen, helpers and apprentices in the following trades: air conditioning and refrigeration mechanics, carpenters, electricians, furniture refinishers, groundsmen, machinists (maintenance), mason-plasterers, oilers, painters, plumber-steamfitters, instrument repairmen, sheet-metal men-welders, truck drivers, electronics technicians-maintenance, and general maintenance helpers. Additional employees who the hospital contended were a part of its maintenance department were excluded by the Commission from the unit on the ground that they did not have a sufficient community of interest with the skilled tradesmen, and that their duties differed widely in skill requirements from those employees covered by the unit.[2]

In its decision of February 14, the Commission ordered that an election be held at which members of the unit might select a bargaining representative. Thereafter the date for the election was fixed as March 3, 1969, and the hospital asked that it be postponed one week. The Commission held a hearing on the request on February 27, 1969, after

---

[2] The persons thus excluded by the Commission from the unit which it established held the positions of chauffeur, chief elevator operator (and by inference elevator operators), security guard and parking attendant.

which it ordered the election postponed to March 5, 1969. Between February 27 and March 5, 1969, the hospital (a) sent each employee in the unit three different letters advising the employee not to vote for the union, (b) gave each such employee a similar letter with his time card on the day of the election, and (c) called a meeting for such employees for the day before the election for the purpose of reviewing the issues in the election.

With thirty-seven of the forty eligible members of the unit voting at the election the vote was twenty-four in favor of the union, seven opposed, and other ballots protested, challenged or declared void. On March 7, 1969, the hospital filed written objections to the election with the Commission on the grounds that the unit established by the Commission was not an appropriate unit, and that the time between the notice of the election and the date of the election was not sufficient "to satisfy the requirements of due process of law and freedom of speech" under the State and Federal constitutions, "nor did it afford to . . . [the hospital] the opportunity to be represented at the election by counsel of its choice." The last ground stated related to a conflicting engagement of the hospital's counsel. After holding a hearing thereon, the Commission, by a written decision, rejected the hospital's objections, giving reasons for its action. On March 21, 1969, the Commission certified the union as the bargaining representative for the unit.

On April 1, 1969, the union wrote to the hospital suggesting a conference for the purpose of negotiating a collective bargaining agreement to cover employees in the unit established by the Commission. The hospital, through its counsel, wrote to the union stating the same grounds contained in its written objections of March 7, 1969, described above, and concluding that "the hospital respectfully declines to bargain with your union unless and until directed to do so by a definitive court decision."

On April 7, 1969, the union filed with the Commission a written charge that the hospital had refused to bargain collectively with the certified representative of the employees

of the unit. On April 18, 1969, the Commission acting under G. L. c. 150A, § 6 (c), issued a complaint against the hospital making the same charge which was made by the union and ordered a hearing to be held thereon. At the hearing, counsel for the hospital conceded that it had refused to bargain with the union for the reasons previously stated in its written objections of March 7, 1969, and refused to bargain unless ordered by a court to do so. After the hearing, the Commission on August 11, 1969, filed a written decision holding that the hospital "from April 4, 1969, has refused to bargain collectively with the union, in violation of the State Labor Relations Law (Chapter 150A)" and concluding with an order (a) that the hospital cease and desist from such refusal to bargain collectively with the union, and (b) that upon request, it bargain with the union, and in no event later than fifteen days from the date of the order. It is this order which the Commission asked the Superior Court to enforce in this proceeding.

General Laws c. 150A, § 6 (e), as amended by St. 1954, c. 681, § 10, provides that if the Commission petitions the Superior Court for the enforcement of one of its orders, the "order or decision of the commission shall be reviewed in accordance with the standards for review provided in paragraph (8) of section fourteen of chapter thirty A."[3] It also provides that "no objection that has not been urged before the commission . . . shall be considered by the court," except in extraordinary circumstances. In the Superior Court the hospital raised only those two objections which

---

[3] The pertinent portions of G. L. c. 30A, § 14, paragraph (8), inserted by St. 1954, c. 681, § 1, are: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions; or . . . (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. . . . The court shall make the foregoing determinations upon consideration of the entire record, or such portions of the record as may be cited by the parties. The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."

it had filed with the Commission under date of March 7, 1969. We shall consider them separately. For that purpose we have before us the same record which was filed in the Superior Court by the Commission. It includes transcripts of the several hearings before the Commission.

1. The hospital contends that the order of the Commission establishing the skilled tradesmen of its maintenance department as a bargaining unit is unlawful. Although it uses the words "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law," in arguing this point, it does not expand on those words and instead relies basically on the claim that the order is unsupported by substantial evidence. It is by that standard that we test the validity of the order. General Laws c. 30A, § 1 (6), defines "substantial evidence" as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Singer Sewing Mach. Co.* v. *Assessors of Boston,* 341 Mass. 513, 517. *McCarthy* v. *Contributory Retirement Appeal Bd.* 342 Mass. 45, 47. This does not permit a court to treat the proceeding as a trial de novo on the record which was before the administrative board. A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. *Universal Camera Corp.* v. *National Labor Relations Bd.* 340 U. S. 474, 488. The judicial inquiry is limited to a determination whether within the record which was before the Commission and which it has sent to the court for review there is "such evidence as a reasonable mind might accept as adequate to support" the Commission's conclusion that the skilled tradesmen in the hospital's maintenance department constituted an appropriate unit for the purposes of G. L. c. 150A, § 5. If there is, the action of the Commission must be affirmed even though the court would have reached a different result if it were originally in the position of the Commission.

The State Labor Relations Law (G. L. c. 150A) does not attempt to define or prescribe what shall or shall not be an

appropriate unit for collective bargaining. Instead it provides in § 5 (b), amended through St. 1964, c. 576, § 5, that "[t]he commission shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining and otherwise to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, profession or craft unit, plant unit, or subdivision thereof, or a one-man unit where the commission deems such unit to be appropriate; provided that, in any case where the majority of employees of a particular profession or craft shall so decide, the commission shall designate such profession or craft as a unit appropriate for the purpose of collective bargaining . . . ." Thus the appropriate unit may be as small as a one-man unit or as extensive as an employer unit, depending upon the decision of the Commission in the proper exercise of the discretion delegated to it.

In the only judicial interpretation of this statutory language by this court, we said in *Jordan Marsh Co.* v. *Labor Relations Commn.* 316 Mass. 748, 751: "Bargaining units in a particular industry must, as far as is reasonably possible in view of all pertinent factors, be adapted to the manner in which that industry is habitually carried on, and in general stress must be laid not only upon securing groups of employees who, as the business is conducted, have common interests in the more important matters which are likely to become the subjects of collective bargaining, so that they can speak with a common voice in such matters, but also upon gathering into each of such groups the largest number practically possible of employees having such common interests, in order that discord may be minimized, and that the industry may not be continually hampered by the jealousies and conflicting or competitive claims of a large number of small rival units which must work together in the industry, but which may choose to be represented by different and possibly antagonistic unions. . . . [T]he plant or industry ought not to be Balkanized. On the other hand,

reasonable consideration must also be given to the desires of the employees and to the practical possibility of securing adequate representation for proposed units without unreasonable delay."

The hospital's attack on the unit as established by the Commission is based in part on the claim that the Commission did not give effect to the organizational structure and personnel policies, practices and classifications then in effect at the hospital. It is also based in part on the claim that the Commission's action is not in accord with what administrative agencies have determined to be appropriate units in other jurisdictions. While the Commission was required to consider the existing organization and personnel policies of the hospital, it was not bound by them. Neither was the union bound by them since they were not the result of any prior collective bargaining under the State Labor Relations Law. The hospital was not subject to the act until the amendment of c. 150A, § 2 (2), by St. 1968, c. 513, §§ 3, 4, making certain nonprofit institutions subject to the act's provisions. See *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467. Similarly, the decisions of administrative boards in other jurisdictions were not binding on the Commission.

The Commission was not compelled to accept the hospital's proposal that the bargaining unit should include "all the hourly rated employees, nonexempt people you might call them, the manual group or blue collar group in the Hospital, regardless of what department they work in." The Commission thus was not compelled to place skilled tradesmen in the same unit with all of the food handlers and kitchen workers, all of the housekeeping employees, and all of the nonprofessional nursing service employees.

Based upon an examination of the entire record in this case, and upon consideration of the applicable statutory and other provisions of law, we hold that the decision and order of the Commission in establishing the now disputed bargaining unit consisting of about forty employees of the hospital's maintenance department (a) was supported by

substantial evidence, (b) was not arbitrary, capricious or an abuse of discretion, (c) was made in accordance with applicable law, and not upon any unlawful procedure, and (d) was not in violation of any constitutional provisions or requirements. The Commission held full and complete hearings whenever required to do so, it made a full and complete record of each hearing, and after each hearing it rendered a decision in writing disposing of the issues involved in the hearing and giving the grounds or reasons for its action.

2. The hospital contends that its constitutional rights of due process of law and freedom of speech were violated because of the alleged unduly short time between the order for the holding of an election to select a bargaining representative and the holding of the election. It does not contend that the Commission made any order or in any other way interfered with or prevented it from exercising its right of free speech between the two dates, but argues only that the period allowed for such exercise was so short that it amounted to a denial of the right. The facts of this case do not bear out this contention. Although the record does not show the date of the original notice that the election would be held on March 3, 1969, the hospital knew as early as February 14, 1969, that there would be an election because the same decision which established the bargaining unit ordered that an election be held. The record shows that on February 27, 1969, the Commission informed the hospital that the election would be postponed to March 5, 1969. The Commission interposed no obstacle to the hospital's exercise of its right of free speech in communicating with its forty employees in the established unit; and the hospital did communicate with them as stated earlier in this opinion. That the time which the hospital had to campaign against the union was not as long as it desired does not amount to a denial of either due process of law or of free speech. The additional fact that the particular lawyer then handling the matter for the hospital in behalf of a firm of about fifty lawyers had a conflicting engagement which prevented him from being present

at the election did not alone or in combination with the alleged short time in which to campaign amount to a deprivation of any of the hospital's constitutional rights.

*Final decree affirmed.*