**HINGHAM RETIREMENT BOARD**
vs.
**CONTRIBUTORY RETIREMENT
APPEAL BOARD of the
COMMONWEALTH of
MASSACHUSETTS** and Richard F.
**TONRY**

Civ. A. No. 41751

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts
Suffolk County

January 28, 1981

■■■■■■■■■■■■■■■■■

George Ford, Catherine White for the plaintiff.

Charles Humphrey, Daniel Lenehan, Francis X. Bellotti for the defendant.

## MEMORANDUM OF DECISION

MASON, J. In this action under G.L., c. 30A, sec. 14, plaintiff, the Hingham Retirement Board (Board) seeks judicial review of a decision of the defendant, Contributory Retirement Appeal Board (C.R.A.B.), which decision awarded accidental disability retirement benefits to Defendant Richard F. Tonry.

### Facts

The facts as found in the agency proceedings are summarized as follows: Richard Tonry worked as a call firefighter for the Town of Hingham from 1963 until 1971. Tonry's chief occupation was the construction of residential housing, and he owned and operated a construction company until 1969.

In April, 1969, while dragging a hose up a hill at a fire, Tonry suffered a heart attack. He was subsequently hospitalized for 20 days. After his heart attack, Tonry was advised by his physician to discontinue active participation in construction and he sold his construction business based on this advise. He resumed his position as a call firefighter, but in attending fires he merely watched the proceedings and took no active role. He was discharged from the force in 1971. On various occasions after his heart attack, Tonry has complained of fatigue and chest pains.

Tonry has held several jobs since the sale of his construction company. He worked briefly as a temporary building inspector for the Town of Hingham. He also worked as a "Trouble Shooter" for a construction company and later worked as a construction supervisor, overseeing a variety of small construction jobs. In 1976, Tonry resigned from his last job on the advise of his physician after suffering chest pains while climbing a ladder.

### The Agency Proceedings

In Decmeber, 1972 Tonry filed an application for accidental disability retirement with the Board. When the Board refused to act upon his application, Tonry appealed to C.R.A.B. which, after finding that Tonry was eligible for benefits under G.L. c. 32, sec. 7 and 28F, subject to the requirements of examination by a medical panel and proof satisfactory to the Board, remanded the matter to the Board. The Board then convened a medical panel as required by c. 32, sec. 7. The panel answered all three questions on, the Certificate of Medical Panel necessary to certify the incapacity of the applicant in the affirmative. The Board subsequently denied Tonry's application and he appealed the Board's decision to C.R.A.B. At the hearing of the appeal the parties entered into a stipulation of withdrawal, in which the Board agreed to convene a new panel upon the withdrawal of the appeal.

A second medical panel was convened, which panel also answered all three questions on the required Medical Certificate in the affirmative. The Board again' denied Tonry's application, finding that Tonry was disabled from performing the functions of a call firefighter but was capable of resuming his former occupation. Tonry appealed the board's decision to C.R.A.B.

The question at the hearing on the appeal to C.R.A.B. was whether, in order to be awarded accidental disability retirement benefits, Tonry was required to show only that he was disabled to perform the duties of a call firefighter, or whether he was also required to show that he was permanently disabled from performing the duties of his regular occupation.

The hearing officer, in a recommended decision which was adopted by C.R.A.B., found that under G.L. c, 32, sec. 7 and 28F, Tonry's eligibility to receive accidental disability retirement arose after a showing that he was incapable of performing the duties of a call firefighter, and that he was not required to show disability to perform his regular occupation. In order to dispose of all issues in this protracted matter, however, the hearing officer found that even if

he were required to show disability to perform his regular occupation, Tonry would still be entitled to accidental disability retirement because he is permanently disabled from performing the duties of his regular occupation.

## Discussion

The Board argues that the decision of C.R.A.B. must be reversed for the following reasons. First, the C.R.A.B. erred in failing to incorporate certain provisions of c. 32, sec. 85H in its construction of c. 32, sec. 7 and refusing to find that Tonry was required to show that he was disabled from performing the duties of his regular occupation. Second, that C.R.A.B.'s alternative finding that Tonry is disabled from performing the duties of his regular occupation is without sufficient evidentiary basis and based upon errors of law.

## I.

In a judicial review under sec. 14 of c. 30A, a decision of an administrative agency can be set aside only on the grounds listed in paragraph 7 of c. 30A, sec. 14. The Board argues that C.R.A.B. made errors of law in violation of c. 30A, sec. 14(7)(c) in its construction of the requirements of G.L. c. 32, sec. 7.

General Laws, c. 32, sec. 7 provides in pertinent part:[1]

Any member . . . who becomes totally and permanently incapacitated for further duty before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . without serious and wilful misconduct on his part, upon his written application on a prescribed form filed with the board . . . shall be retired for accidental disability. . . . No such retirement shall be allowed unless the board, after such proof as it may require, including in any event an examination by the medical panel provided for in subdivision (3) of section six and including a certification of such incapacity by a majority of the physicians on

such medical panel, shall find that such member is mentally or physically incapacitated for further duty to the extent and under the circumstances set forth in this section, that such incapacity is likely to be permanent, and that he should be so retired. . . .

It is the position of the Board that language found in section 85H of c. 32 which deals with the disability of call firefighters should be read into the construction of c. 32, sec. 7, thereby requiring Tonry to prove that his disability prevents him from performance of the duties of his regular occupation as well as the duties of a call firefighter. Section 85H provides in relevant part:

The selectmen of every town may retire from active service any call firefighter or reserve, special or intermittent police officer who becomes permanently disabled mentally or physically by injuries sustained through no fault of his own in the actual performance of duty as such firefighter or policeman. . . . Whenever a call firefighter or any member of a volunteer fire company . . . or a reserve police officer or reserve or call firefighter of a city is disabled because of injury or incapacity sustained in the performance of his duty without fault of his own, and is thereby unable to perform the usual duties of his regular occupation at the time such injury or incapacity was incurred, he shall receive from the city or town for the period of such injury or incapacity the amount of compensation payable to a permanent member of the police or fire force thereof . . . provided, that no such compensation shall be payable for any period after such police officer or fire fighter has been retired or pensioned in accordance with law. . . .

---

[1] Although as a call fireman Tonry was not a member of the contributory retirement system, Tonry is eligible for accidental disability retirement benefits under c. 32, sec. 7 because of c. 32, sec. 28F, which provides: ". . . any person who is employed in any governmental unit and who is prohibited from joining the contributory retirement system in effect therein, shall be eligible to the benefits thereby provided in case of accidental disability and/or accidental death, subject to the provisions of sections seven and nine as to requirements of examination by medical panel and prove satisfactory to the board."

Section 85H thus describes two types of benefits available to call firefighters. In the first sentence of sec. 85H, towns are given the discretion to retire a call fire fighter who becomes permanently disabled in the performance of his duty. In addition, sec. 85H provides that compensation must be paid to a call firefighter who is temporarily disabled while performing his duties and thereby becomes unable to perform the duties of his regular occupation.

The Board argues that the test of eligibility for temporary disability benefits under c. 32, sec. 85H should also be applied in determining eligibility for retirement under c. 32, sec. 7, because in sec. 85H the Legislature specifically addressed the issue of the disability of call firefighters, and because rules of statutory construction require that the individual provisions of the statute be read as a whole.

It is well settled that "in construing a statute, its words must be given their plan and ordinary meaning according to the approved usage of language . . . and that the language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it. **Johnson's Case**, 318 Mass. 741, 747 (1945).

Guided by this principal, the Court finds no reason to apply an eligibility requirement for one type of benefit contained in sec. 85H to the construction of sec. 7. Although sec. 85H does apply to call firefighters, the provision which the Board claims is controlling is addressed to compensation in cases of temporary disability. There is no indication in the wording of sec. 7 or sec. 85H that the Legislature intended to extend the eligibility requirement contained in one of the provisions of sec. 85H to sec. 7.

The Board argues that sec. 85H should be incorporated into the construction of sec. 7 because sec. 7 is the general accidental disability retirement section while sec. 85H specifically deals with call firefighters. However, sec. 7 itself also contains a specific provision governing call firefighters. Section 7(2)(6) specifically refers to call firemen and provides a method of determining their annual rate of regular compensation for purposes of computing the amount of disability pensions.

The Board also argues that construing sec. 7 so that a call firefighter applying for disability retirement must prove only that he can no longer perform the duties of a firefighter leads to an incongruous result whereby the firefighter is allowed to circumvent the strict burden of proof under sec. 85H, by applying for benefits under sec. 7. This argument fails to distinguish, however, that sec. 85H provides for two separate types of benefits. With respect to compensation for temporary disability, sec. 85H requires a showing of incapacity to perform the duties of both a call firefighter and one's regular occupation. The existence of a different test to determine eligibility for temporary disability compensation under sec. 85H as opposed to disability retirement under sec. 7 does not allow a call firefighter to circumvent the provisions of sec. 85H.

The Board's final argument on this issue is that providing disability retirement benefits for one whose ability to engage in his regular occupation has not been impaired is contrary to public policy, especially in present times of fiscal conservatism. However, the Legislature has provided for the adjustment or reduction of disability pensions when warranted by a disabled individual's actual or potential earnings. G.L. c. 32, secs. 8 and 91A. Thus, the statutes provide a method for reducing or suspending an individual's pension when his earnings from gainful occupation after retirement justify such action.

In sum, the court finds that C.R.A.B. did not err as a matter of law in refusing to incorporate sec. 85H into its construction of sec. 7. The proper test for determining Tonry's eligibility for disability retirement was whether his disability prevented him from performing the duties of a call firefighter.

## II

Although the finding that C.R.A.B. applied the correct standard in determining Tonry's eligibility for disability retirement makes it unnecessary for the Court to address the Board's second argument, the Court concludes that C.R.A.B.'s alternative finding that Tonry would be eligible for retirement even if the test required proof of

incapacity to perform his regular occupation should also be upheld.

To the extent that an agency finding is one of fact, it must be upheld unless it is not supported by substantial evidence. **Raytheon Company v. Director of Employment Security,** 364 Mass. 593, 595-96 (1974).

Substantial evidence is defined in c. 30A, sec. 1(6) as "such evidence as a reasonable mind might accept as adequate to support a conclusion". Under this standard of review "a court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." **Labor Relations Commission v. University Hospital, Inc.,** 359 Mass. 516.521 (1971).

The record in this case indicates some difference of opinion among the doctors who examined Tonry as to the nature of his present disability and his ability to resume employment. The doctors all agree that Tonry suffered an acute myocardial infarction in 1969. There is disagreement concerning the severity of the attack and the cause of his current chest pains. The letter to the Board accompanying the Certificate of the second medical panel states that, although it was the unanimous impression of the panel that Tonry was disabled to perform the functions of a call fireman, he is physically capable of limited gainful employment and that "there is no medical reason to warrant stating he could not fully fulfill the functions of a boss in this kind of work at this time." (Exhibit V). The same letter also states that Tonry "obviously could not lift heavy objects and he would be limited largely to supervisory work and light labor".

However, it was the uncontroverted testimony of Tonry that, as the owner of a construction company with four (4) employees, he ordinarily worked seven (7) days a week, ten (10) hours a day, performing all the duties of a laborer, foreman and bookkeeper and that he spent approximately 90% of his time laboring with his crew. Tonry's physician had recommended that "Mr. Tonry not engage in such activities

lifting more than 30 lbs., isometric pulling or pushing exercise) in the future and if returning to his former employment means return to this type of exercise, then I would have to say he is totally disabled from his former employment". (Exhibit D).

In addition to Tonry's own testimony concerning his fatigue and chest pains, further evidence supporting C.R.A.B.'s finding that Tonry was disabled from performing his regular occupation is found in the deposition of Dr. Savola, who testified that "It would be, I think, an unhealthy thing for him to try to return to the kind of work that he was formerly doing . . . heavy lifting, climbing ladders . . . operating heavy equipment, being in an atmosphere of cold and hot, vast temperature change, being outdoors . . . dusty, dirty atmosphere, all of those would mitigate the person with heart disease from returning to that kind of occupation" (at pp. 22-23). The evidence outlined above is adequate to support a conclusion that Tonry was disabled from performing the duties of his regular occupation. There was substantial evidence before the agency to support its finding that Tonry was incapable of performing those types of duties which he performed as his regular occupation prior to his heart attack.

The Board further argues that C.R.A.B.'s definition of disability was unduly restrictive and not supported by case law. Although the medical experts agreed that Tonry was capable of performing a desk job or working as a boss or supervisor, the uncontradicted testimony of Tonry was that he spent approximately 90% of his time working with his crew as a laborer. In **Quincy Retirement Board v. Contributory Retirement Appeal Board,** 340 Mass. 56 (1956), the Court found that a lieutenant in a fire department was totally incapacitated and eligible for disability retirement under G.L., c. 32, sec. 7 although he could do sedentary work in the fire department. The Court found that the incapacity referred to in sec. 7 "is the substantial inability of an applicant to perform the duties of his particular job or work of a similar nature . . ." Where the uncontradicted evidence before C.R.A.B. was that the most substantial part of Tonry's regular occupation was spent performing

labor in the field, Tonry's ability to perform a desk or supervisory job would not preclude a finding that he was incapacitated from performing the duties of his regular occupation.

Finally, the Board argues that C.R.A.B.'s finding was legally insufficient in that there is no evidence that Tonry's incapacity resulted from the performance of his duties as a firefighter. There is no dispute that Tonry suffered a heart attack while performing the duties of a firefighter. Tonry's physieian testified that "that's where it all began, with his initial heart attack" and that it was his opinion that the heart attack could not be isolated from any underlying heart disease. He also testified that a heart attack aggravates an underlying heart disease and that Tonry's underlying heart disease is medically related to his heart attack of 1969. (Deposition of Dr. Savola at pp. 26-27).

The Court finds that C.R.A.B. was correct as a matter of law in determining that the proper standard of determining Tonry's retirement eligibility under c. 32, sec. 7 was whether he was incapacitated from performing the duties of a call firefighter. The Court also finds that even if the requirements for temporary disability compensation contained in c. 32, sec. 85H were applicable, the agency finding that Tonry was disabled from performing the duties of his regular occupation is supported by substantial evidence and free from error of law.

For the foregoing reasons, the decision of C.R.A.B. is affirmed.

Arthur M. Mason
Justice
Superior Court Department