**Brian SWARTZ d/b/a TOWNLINE INSURANCE AGENCY, Plaintiff**
**vs.**
**COMMISSIONER OF INSURANCE, Defendant**

**No. 36244**

Superior Court/Suffolk County
Commonwealth of Massachusetts

**April 8, 1982**

Paul W. Johnson, Asst. A.G., counsel for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### Introduction

This action comes before the court under G.L.c. 30A, § 14, judicial review of an administrative agency decision following an adjudicatory hearing. Plaintiff, Brian Swartz, also alleges in his amended complaint a claim under 42 U.S.C. § 1983 against the defendant, the Commissioner of Insurance.

The hearing officer found plaintiff to have registered and charged persons for motor club coverage without their knowledge or consent. On this basis, Swartz was found to be lacking "trustworthiness, competency and suitability to be an insurance agent" as required under G.L.c. 175, §§ 163, 166. Consequently, Swartz was fined $4,000 pursuant to G.L.c. 176D, his licenses were revoked, and he was ordered to divest himself of his insurance agency and barred from ever working in the insurance business without prior approval of the Commissioner of Insurance. This decision was affirmed by the Commissioner on June 11, 1979.

Judge Young issued a preliminary injunction on July 27, 1979, staying the revocation of Swartz's licenses and allowing him to continue practice as insurance broker, with certain conditions. The court made no finding with respect to plaintiff's probable success on the merits in the present action for review.

Plaintiff had filed an earlier action[1] seeking a judgment declaring that the Insurance Division was not entitled to conduct a warrantless search of Swartz's

Owen Gallagher, counsel for plaintiff.
Nancy B. Salafia, counsel for plaintiff.
Francis X. Belloti, A.G., counsel for defendant.

---

1. *Brian Swartz v. Department of Banking and Insurance, and other,* civil action number 24089.

business premises under G.L.c. 176D, § 5.[2] That case is now on remand from the Supreme Judicial Court (Quirico, J.) and the issue has not yet been decided by the Superior Court. Plaintiff's motion to consolidate that action with the instant one had been denied.

The defendant, Insurance Commissioner, has now filed a motion for summary judgment in the instant action. Although the Supreme Judicial Court has approved motions for summary judgment as a vehicle for disposing of appeals brought pursuant to G.L.c. 30A, § 14, it has also noted that in light of the nature of judicial review generally applicable to such petitions, motions for summary judgment are "largely superfluous" in a proceeding of this kind. See, **Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Commission**, 372 Mass. 152, 153 and n.2 (1977). In ruling on the motion for summary judgment the standard of judicial review contained in G.L.c. 30A, § 14 controls.[3]

The following is a summary of the evidence in this case. The plaintiff was licensed by the Insurance Division to engage in the sale of insurance and sale of motor club memberships, doing business as Townline Insurance Agency. Plaintiff was listed as an agent for Universal Motor Club with the arrangement that he would receive as commission 90% of the approximately $25.00 membership fee in return for an agreement to pay for all losses incurred under the motor club contracts. In 1977, Swartz, by his own count, sold between 900 - 1200 memberships and had fewer than 50 claims during that period of time. Between January and May of 1977, inspection of Townline's records revealed only three paid claims totalling fifty dollars and commissions retained for 796 contracts totalling $18,945.00.

Eight witnesses testified on behalf of the Insurance Division — four of the plaintiff's customers and four Insurance Division employees. In addition, responses from some of Swartz's customers to a questionnaire sent to them by the Insurance Division were admitted into evidence. Generally, these customers testified that they had not been made aware of the motor club membership when they purchased their insurance from Swartz, and if they had been aware they might not have made that choice, particularly if they already had towing coverage in their insurance policy. Most of the testifying customers only discovered that they were enrolled in the motor club many months after they purchased their coverages when they received in the mail documentation of their insurance premiums and motor club contracts.

Swartz called seven other customers to testify in his behalf, each stating that Swartz had sufficiently outlined all possible insurance coverages, including motor club memberships, before payment was made. Swartz denied all allegations of wrongdoing and claimed that he always fully explained available coverages. In addition, Swartz demonstrated that fifteen of the fifty-nine customers who answered the questionnaire, had signed a form requesting the same coverage as in previous years. The list, which was checked — marked by Swartz for each item previously covered, referred in the last item to motor club membership.

Survey researchers, John Becker and Frederick Wiseman, both testified as expert witnesses discrediting the survey methods used by the Insurance Division in the questionnaire mailed to Universal Motor Club members.

---

2. The action for declaratory relief raised other issues not relevant for discussion in the instant case.

3. This applies only to the G.L.c. 30A, §14 claim. If the 42 U.S.C. § 1983 is recognized, the usual summary judgment standard would apply.

Plaintiff argues in his brief that the motion for summary judgment must be denied because he is entitled to a review of the record. Plaintiff is erroneous in assuming that such a review would not be made at this time; a summary judgment review is not inconsistent with a review of the record. This decision is based on a review of the complete record which includes the transcripts of the testimony taken before the agency hearing officer and all physical evidence marked as exhibits at that time.

On the basis of the above, the Insurance Commissioner, on review of the hearing officer's decision, found substantial evidence of unfair and deceptive trade practice as defined by G.L.c. 176D, §§ 2 & 3. He therefore denied plaintiff's appeal.

## Discussion

### I. Substantial Evidence to Support the Decision

In Count I of the plaintiff's amended complaint, Swartz claims that the decision of the Commissioner was unsupported by substantial evidence. Under G.L.c. 30A, § 14, it is the duty of the reviewing court to determine "upon consideration of the entire record" whether substantial rights have been prejudiced because an agency decision is "unsupported by substantial evidence." If the agency's decision is supported by substantial evidence it cannot be set aside, except on some other ground. **Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Commission,** 372 Mass. 152, 153 (1977); **Morse v. Board of Selectmen of Ashland,** Mass. App. Ct. Adv. Sh. (1979) 1197, 1209. G.L.c. 30A, § 1(6) defines "substantial evidence" as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Under this standard, the court finds that the decision of the Insurance Division cannot be overturned for want of substantial evidence on the record.

Much has been said regarding the limited nature of judicial review and it bears repeating here. The court's determinations must be based solely upon the record, except in cases of alleged irregularities in procedure before the agency not shown in the record. G.L.c. 30A, § 14(5). Moreover, the court is directed by the legislature to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G.L.c. 30A, § 14(7). The court cannot substitute its judgment for that of the administrative agency. **New England Telephone and Telegraph Co. v. Department of Public Utilities,** 360 Mass.

443, 493 (1971); **Labor Relations Commission v. University Hospital, Inc.,** 359 Mass. 516, 521 (1971). This is particularly true where questions of credibility are involved. **Boylston-Washington, Inc. v. Alcoholic Beverages Control Commission,** Mass. App. Ct. Adv. Sh. (1979) 1898. "The Commission has had the additional benefit of observing the witnesses before judging their credibility and it is not for [the] court to substitute its judgment on questions of fact for that of the agency." **Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Commission,** 372 Mass. 152, 154 (1977).

In the instant case there was enough evidence "as a reasonable mind might accept as adequate to support a conclusion," that Swartz did not meet the licensing standard of trustworthiness. The customer witnesses for the Insurance Division testified that they were enrolled in a motor club by Swartz without their knowledge, consent or signature on an application. One customer, Andrea Linnell, was informed that she had no towing coverage when she inquired about a claim although she had, without her knowledge, been enrolled as a member of the motor club prior to her inquiry. As a result of Swartz's misinformation, she did not seek reimbursement for a second towing fee.

Written comments in response to the Insurance Division questionnaire offered further evidence of the ignorance of many customers regarding their membership status, even accounting for the unreliability of the surveying methods.

The Insurance Division was free to believe these four customers and the Insurance Division investigators over the denials of plaintiff. The amount of weight to be accorded to plaintiff's witnesses was a decision squarely within the discretion of the administrative agency and should not be reevaluated at this juncture. See, **Universal Camera Co. v. National Labor Relations Board,** 340 U.S. 474, 488 (1951), quoted with approval in **Labor Relations Commission v. University Hospital, Inc.,** 359 Mass. at 521.

### II. Constitutionality of G.L.c. 175, §

## 166B.

Under Count II of plaintiff's amended complaint, the constitutionality of G.L.c. 175, § 166B has been challenged as applied to the facts of the case. This provision empowers the Insurance Commissioner to revoke insurance licenses and to require the disposition of any interest in the agency or broker who employs the person whose license has been revoked in accordance with this chapter, or who permits such a person to serve as partner, stockholder, or officer of his or her agency without prior approval of the Commissioner, shall have his or her own license subject to revocation or suspension.

According to G.L.c. 30A, § 13; G.L.c. 175, § 166B cannot come into effect until the agency affords the licensee an opportunity for a hearing in conformity with G.L.c. 30A, §§ 10, 11, 12. The plaintiff therefore claims that G.L.c. 175, § 166B operates to penalize those who avail themselves of their right to a hearing and is thus unconstitutional. This argument is completely without merit. The purpose of G.L.c. 30A, § 13 is to protect licenses from administrative action that might pose substantial harm to them. The procedural safeguard of a proper adjudicatory hearing is designed to assure licensees the maximum opportunity to defend their interests. It is only common sense that actions taken pursuant to G.L.c. 175, § 166B should not be taken without an administrative hearing, and only after careful fact-finding by the hearing officer. Rather than subjecting the plaintiff to a penalty for the exercise of his rights, § 166B in conjunction with G.L.c. 30A, § 13, operates to safe-guard plaintiff's interests. The final outcome of an administrative hearing is of course always a risk to the subject, but it does not follow that his constitutional rights have been violated if the determination is not in his favor and the maximum penalties are invoked.

Plaintiff also argues that G.L.c. 175, § 166B is in violation of Article XV of the Massachusetts Declaration of Rights which guarantees trial by jury for controversies concerning property. Plaintiff is construing Article XV far too broadly. On the federal level, the analogous issue of whether the Seventh Amendment requies jury trial for administration actions is well-settled. The United States Supreme Court in **Atlas Roofing Co. v. Occupational Safety Commission,** 430 U.S. 442 (1976) summarized decades of case-law establishing the right of Congress to place the fact-finding function in the hands of administrative agencies. In 1921, the High Court stated that, "[I]f the power of the Commission to regulate the relationship is established [then] to regulate the relationship and to decide the facts affecting it are hardly separable." **Block v. Hirsh,** 256 U.S. 135, 158 (1921), quoted in **Atlas Roofing, supra,** at 452. Moreover, it was stated in **Pernell v. Southall Realty,** 416 U.S. 363, 383 (1974), that "the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administration adjudication..." See, also, **Curtis v. Loether,** 415 U.S. 189 (1974); **NLRB v. Jones & Laughlin Steel Corp.,** 301 U.S. 1 (1937).

The same reasoning applies to Article XV of the Massachusetts Declaration of Rights although this article guarantees jury trials for "property" concerns, not "suits at common law..." as guaranteed under the Seventh Amendment to the United States Constitution. Plaintiff's argument is not only inconsistent with the well-established body of administrative law in the Commonwealth, but he also misconstrues the nature of the property right that is protected. The right "to engage in any lawful occupation..." is a property right under Article I, X and XII of the Declaration of Rights, according to the Supreme Judicial Court in **Mansfield Beauty Academy, Inc. v. Board of Registration of Hairdressers,** 326 Mass. 624, 627 (1951), and by analogy might fall within the definition of property under Article XV. However, the full definition of property in the **Mansfield Beauty Academy, Inc.** opinion included "the right to engage in any lawful occupation,

subject to reasonable regulation." **Id.** at 627 (emphasis added). Moreover the **Mansfield** Court stated that "rational presumptions are made in favor of every legislative enactment, and invalidity will be found only when a statute is in manifest excess of legislative power." **Id.**

Plaintiff cites **Commonwealth v. United Food Corp.,** 374 Mass. 765 (1978) as authority for his jury trial claim. However, **United Food** involved a claim under Article XII of the Declaration of Rights — Right of Jury Trial in Criminal Cases — and did not involve an administrative hearing.[4] The Supreme Judicial Court stated that "in order to fall within the category of legal actions which do not require a jury, the judgment must be free from any solely punitive element. **United Food, supra,** at 779. In **United Food** the Court found that since the statute, G.L.c. 139, denied any discretion to the judge and required particular results that in some cases may be punitive, a jury trial was required for that portion of the judgment that deprived defendant of his property.

The revocation or suspension of a license is not penal, according to the Supreme Judicial Court in **Levy v. Board of Registration and Discipline in Medicine,** Mass. Adv. Sh. (1979) 1857, 1868. "Rather, it is designed to protect the public...[T]hose holding licenses must have the important qualification of good character." **Id.** See also, **Deluty v. Commissioner of Insurance,** Mass. App. Ct. Adv. Sh. (1979) 232, 235; **Matanky v. Board of Medical Examiners,** 79 Cal. App. 3d 293, 305 (1978); **Hughes v. State Board of Health,** 348 Mo. 1236, 1241 (1942).

### III. The Constitutionality of G.L.c. 176D, § 7

Plaintiff claims that the provisions of G.L.c. 176D, § 7, which authorizes the Commissioner to fine a person who has committed unfair or deceptive acts up to $1,000.00 for each and every act, are unconstitutional. The Commissioner has ordered the plaintiff to pay $4,000 under this section.

In **Opinion of the Justices,** 375 Mass. 795, 819 (1978) the Court wrote that "the penalty provision is a familiar device conferred on administrative bodies to assist them in the performance of their duties" and "it has been upheld by other courts against attacks based on the absence of a right to a jury trial," citing **United States v. Atlantic Richfield Co.,** 429 F. Supp. 830 (E.D. Pa. 1977); K.C. Davis, **Administrative Law of the Seventies** § 2.13 (1976).

Furthermore, "the delegation of power to the Commission to impose a civil penalty of not more than $1,000 for each violation is not, by itself, an excessive delegation of legislative power." **Commonwealth v. Diaz,** 326 Mass. 525, 528-530 (1950). See also, **Smith v. Division of Marine Fisheries,** 6 Mass. App. Ct. 971 (1979) (power to set fines up to a statutory maximum of $10,000.00 upheld).

Plaintiff also claims that under the instant facts the Commissioner did not have authority under G.L.c. 176D, § 7 since any violation was for the sale of motor clubs under c. 174B, not under 176D. Plaintiff, however, was not solely engaged in the sale of motor clubs and his unfair and deceptive acts were inextricably linked to his position as insurance agent. Since the whole case against plaintiff involves his actions as insurance agent for his customers seeking ordinary insurance, there is no problem finding that his acts fall within the purview of c. 176D.

### IV. Selective Enforcement Claim Under 42 U.S.C. § 1983

---

4. **United Food** involved a proceeding to abate a nuisance. Under the statute, the leased premises that were the scene of the nuisance **must** be ordered closed for one year and all furniture, musical instruments and movable property used to maintain the nuisance must be sold, with the tenant powerless to prevent this.

Count IV of plaintiff's complaint alleges that because Swartz had instituted legal proceedings against the Commissioner in September, 1977 and obtained an injunction at that time forbidding the Commissioner from disclosing information about the investigation to a local television station, defendant retaliated against Swartz in deciding to proceed with a full hearing instead of offering some kind of settlement short of license revocation. Swartz alleges that other similarly situated persons were offered more lenient accommodations and Swartz's attempts at settlement were rebuffed solely because of his exercise of his legal rights. Defendant Insurance Commissioner denied these allegations in its answer. Plaintiff seeks relief under 42 U.S.C. § 1983.[5]

It is well-established that the Fourteenth Amendment to the United States Constitution does not permit unequal application of impartial laws, **Yick Wo v. Hopkins,** 118 U.S. 356, 373-374 (1886), but does permit the "conscious exercise of some selectivity" in law enforcement as long as the selectivity is not based on "an unjustifiable standard such as race, religion, or other arbitrary classification." **Oyler v. Boles,** 368 U.S. 448, 456 (1962); **Commonwealth v. King,** 374 Mass. 5, 20 (1977). See also, **Rzeznik v. Chief of Police of Southampton,** 374 Mass. 475, 484-485 (1978). When a person's exercise of his or her First Amendment rights serves as a basis for the decision to institute enforcement proceedings, this is an arbitrary classification found impermissible by the courts. See, **United States v. Falk,** 479 F.2d 616 (7th Cir. 1973); **United States v. Steele,** 461 F.2d 1148 (9th Cir. 1972); **United States v. Crowthers,** 456 F.2d 1074 (4th Cir. 1972); **Needleman v. Bohlen,** 386 F. Supp. 741 (D. Mass. 1974).

Plaintiff here sets out a **prima facie** case of unconstitutional abuse of prosecutorial discretion, in stating that the exercise of his First Amendment Rights in seeking legal protection motivated the Insurance Division's decision to prosecute. However, this does not automatically mean that a § 1983 action can be maintained.

The Insurance Commissioner is immune from damages liability under § 1983. See, **Butz v. Economou,** 438 U.S. 478 (1977); **Gomez v. Toledo,** 446 U.S. 635, 639 (1980). Ordinarily, equitable relief in § 1983 actions, which is not barred by immunity doctrines, extends to prospective acts — i.e., to prevent a threatened unlawful or unconstitutional action. See, **Allee v. Medrano,** 416 U.S. 802 (1974). In the instant case relief under § 1983 could only be in the form of a **retrospective** injunction, which would be equivalent to declaring the earlier decision infirm. However, "42 U.S.C. § 1983 was not intended to be used as a substitute for the right of appeal or to collaterally attack a judgment..." **Torres Irizarry v. Toro Goyco,** 425 F.Supp. 366, 369 (D.P.R. 1976). Other courts have refused a § 1983 claim when brought as a substitute for appellate procedure although a prima facie case was otherwise made. See, **Coogan v. Cincinatti Bar Association,** 431 F.2d 1209, 1211 (6th Cir. 1970); **Rodes v. Municipal Authority,** 409 F.2d 16 (3rd Cir. 1969), **cert. denied** 396 U.S. 861, **reh. den.** 396 U.S. 950; **Reich v. City of Freeport,** 388 F. Supp. 953, 956 (M.D. Ill. 1974). Further, the United States Supreme Court recently found § 1983 inapplicable when the State Torts Claim Act was the normal channel of redress. **Parratt v. Taylor,** 49 U.S.L.W. 4509, 4510 (May 18, 1981).

---

5. Under 42 U.S.C. § 1983 (1970), any person "who, under color of statute...subjects...any citizen of the United States...to the deprivation of any rights...secured by the Constitution.... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Plaintiff had not raised the discriminatory prosecution argument at the hearing but only first made certain conclusory allegations in his Memorandum in Support of Motion for Independent Hearing Officer. Plaintiff is not claiming that the hearing itself was biased against him due to his earlier legal proceedings, but rather that the decision to proceed with a hearing at all was based on unconstitutional discrimination. Thus, in allowing a § 1983 action when the case is now before this court under 30A review would permit the plaintiff to evade the standard of review under G.L.c. 30A.

Thus, plaintiff's claim of discriminatory enforcement should be examined under G.L.c. 30A, § 14. That is, the agency action should be reviewed to determine if it was "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G.L.c. 30A, § 14(7)(f). Lack of uniformity in sanctions is not enough to render the agency action arbitrary or capricious. See, **Butz v. Glover Livestock Commission Co.**, 411 U.S. 182, 187 (1972).

The scope of review in the present proceeding is limited to the evidence in the record of the proceedings below. G.L.c. 30A, § 14(5). There is no allegation of irregularities in the agency hearing to trigger the exception allowing for further testimony. Swartz made no attempt to offer proof in the proceedings below that he was treated unequally because he exercised his constitutional rights. The amended complaint and Memorandum in Support of Motion For Independent Hearing Officer is insufficient support for this proposition absent any further evidence. The presumption must be in favor of the agency that their decision to prosecute was made in good faith. See, **Commonwealth v. Franklin**, 376 Mass. 885, 894 (1978).

### V. Search and Seizure of Plaintiff's Records and Papers

According to Plaintiff's Memorandum in Opposition to Defendant's Motion For Summary Judgment, on or about August 30, 1977, Insurance Division employees demanded to enter Swartz's business premises and claimed the right to search Swartz's books and records although the employees did not possess any warrant. Swartz states that during the four-day search they examined personal and business papers, and property and personal tax returns.

The Division claimed the right to search Swartz's premises under G.L.c. 176D, § 5 which provides: "The Commissioner shall have the power to examine and investigate into the affairs of every person engaged in the business of insurance in this Commonwealth in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by section two."

On September 21, 1977, Swartz filed an action against the Department of Banking and Insurance (C.A. No. 24089) making three claims for relief: 1) equitable and monetary relief for violation of G.L.c. 66A, the pertinent section of the Fair Information Practices Act for release of personal data about Swartz to the media, 2) declaratory judgment that a search under G.L.c. 176D, § 5 may only be made pursuant to a search warrant, and 3) declaratory judgment that the statute violated Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment of the United States Constitution if G.L.c. 176D, § 5 authorized warrantless searches.

A preliminary injunction was granted barring access to personal data of Swartz by anyone other than the Insurance Commissioner, but the action was dismissed on November 17, 1977 on the ground that Swartz as a business entity could not bring suit under FIPA. The Judge did not address the two claims for declaratory relief in its order. The Supreme Judicial Court reversed the court below for applying the incorrect legal standard on standing to sue under FIPA and for not addressing the declaratory relief claims. **Swartz v. Department of Banking and Insurance,** 376 Mass. 593 (1978). The case was remanded for trial on the merits and

has not yet been heard.

Plaintiff now claims that.the instant action cannot be resolved until the earlier remanded action is settled on the search and seizure issues. This court disagrees and finds that whatever the decision on the constitutionality of the search and seizure claims, the outcome of this case will not be affected. The Supreme Judicial Court in the earlier action withheld final decision on the merits of these claims since it determined that further factual findings were warranted and that the trial judge had precluded full arguments on these claims when he granted the motion to dismiss on the basis of the FIPA claim only. The Court recognized the relevance of the factual issue of whether personal records were searched in determining whether the Insurance Division had exceeded its authority under G.L.c. 176D, § 5.

However, even if the Insurance Division overstepped their authority, it would be harmless error under the instant facts. The evidence gathered against Swartz was derived from an inspection of Universal Motor Club's records which revealed the names of Townline customers who were then surveyed. It was the testimony of these customers that served as the basis for the Agency's decision and such testimony, even absent records and information seized from Townline's offices, constituted substantial evidence to support the decision. Thus, even if the exclusionary rule was applied, and illegally seized evidence and its "fruit" were suppressed, defendant would still prevail on the merits. See, **Wong Sun v. United States,** 371 U.S. 471 (1963).

By way of discussion, the court notes that a warrant is required for searches of business as well as residential premises, however, there is a well-recognized exception for "pervasively regulated businesses." See, **Marshall v. Barlow's, Inc.,** 436 U.S. 305, 313 (1978); **United States v. Biswell,** 406 U.S. 311, 316 (1972); **Collonade Catering Corp. v. United States,** 397 U.S. 72, 74 (1970).

Certain industries have such a history of government oversight that no reasonable expectation of privacy...could exist..." **Barlow's, supra,** at 312 (citations omitted). The United States Supreme Court in **Marshall v. Barlow's** distinguished the facts of that case from those in cases in which a businessman was engaged in a **regulated or licensed business** (emphasis added) and stated that the "businessman in a regulated industry in effect consents to the restrictions placed upon him." **Id.** at 313, quoting from **Almeida-Sanchez v. United States,** 413 U.S. 266 (1973). In such industries no search warrant is required for general administrative inspections pursuant to legislative authority. See, **Collonade, supra.**

The Massachusetts Declaration of Rights does not provide any further protection to plaintiff than the federal constitution does. See, **Commonwealth v. Accaputo,** Mass. Adv. Sh. (1980) 1009. The insurance business has long been established as a closely regulated, state-involved industry.

It appears on the face of G.L.c. 176D, § 5 that the Legislature intended to give the Commissioner the authority to inspect Swartz's records in order to determine whether Swartz was engaged in any violation under G.L.c. 176D. The inspection was related to a belief that Swartz might have deceived his insurance customers when acting in his capacity as insurance agent; therefore, the provision of G.L.c. 176D applies.

Plaintiff is correct in arguing that even when a warrantless search is permissible it must still be conducted in a reasonable manner. **Commonwealth v. Accaputo,** Mass. Adv. Sh. (1980) 1009, 1011. On the basis of the record before the court and limited to the standard of judicial review of G.L.c. 30A, § 14, the court finds that a balance of the specific enforcement needs of the Insurance Division with the privacy needs of the plaintiff does not warrant a finding of unreasonableness. **Order**

489

For the reasons state above, the defendant's motion for summary judgment is ALLOWED and the agency's decision is AFFIRMED.

**Paul Garrity**
**Justice of the Superior Court**