Tucker, Richard T., J.
INTRODUCTION
This is a G.L.c. 30A appeal challenging the decision of Defendant Department of Public Health-WIC Program to terminate and disqualify from the WIC Program for three years Plaintiffs Ramzi, Inc. d/b/a North End Market, Nahed Benyamin, and Emad Benyamin. After a hearing and review of the entire motion record, I find and rule as follows.
BACKGROUND
The following facts are taken from the administrative record. Plaintiffs Emad Benyamin and Nahed Benyamin are, respectively, the president and vice-president of Ramzi, Inc., which owns and operates North End Market, an independent food store at 267 Lincoln Street in Worcester, Massachusetts. Through November 2009, North End Market was an authorized vendor of products approved for sale to qualified Massachusetts families participating in the WIC Program — the United States Department of Agriculture’s Supplemental Food Program for Women, Infants, and Children — administered by Defendant Department of Public Health-WIC Program. Plaintiffs and Defendant had entered into yearly vendor agreements outlining the responsibilities and duties, as well as specifying potential violations and penalties for committing such acts.
On November 23, 2009, Defendant sent Plaintiffs a notice terminating North End Market’s WIC Vendor Agreement for fiscal year 2010 and disqualifying Plaintiffs from participating in the WIC program for three years. This action followed four visits to North End Market by an undercover compliance buyer.[1] During each visit the compliance buyer purchased items using two types of WIC checks.[2] Plaintiffs’ cashier had the compliance buyer sign each check before the check amount was inserted. After each visit, Plaintiffs submitted the WIC checks to Defendant for reimbursement of amounts greater than the amount of food the compliance buyer actually purchased.[3] The total amount Plaintiff overcharged Defendant was $78.15. Defendant determined the Plaintiff committed the following violations of the vendor agreement:
A. Class II Violations
This category of violations includes engaging in a pattern of “[ofyercharging an authorized WIC shopper and/or the WIC Program by writing in a price on the WIC check that is higher than the actual, current shelf price of the WIC products authorized on the WIC check and actually purchased by the authorized WIC shopper.” Class II violations also include “(c)harging an authorized WIC shopper and/or WIC program a set price by check type instead of pricing each check for actual, authorized WIC products actually purchased.” The vendor agreement defines pattern as “two or more incidences of a violation.” It defines incidence as “one isolated event in a single point in time or any single occurrence of a violation.” Vendors who commit a Class II violation are subject to a mandatory three-year disqualification from the WIC program.
Defendant determined two types of Class II Violations occurred during the compliance visits. The first involved Plaintiffs overcharging Defendant, while the second involved Plaintiffs charging a set price by check type instead of by actual items purchased.
B. Class III Violations
This category of violation includes engaging in a pattern of “(p)rovision or substitution of unauthorized food products for the WIC products specified on the WIC check.” A.R. 275. A Class III violation carries a mandatory one-year disqualification from the WIC program.
Defendant informed Plaintiffs in the November 30, 2009 letter announcing termination and disqualification that it concluded the compliance buyer’s purchase of two 18-ounce boxes of Post Shredded Wheat, a non-WIC approved cereal, during compliance visit on September 30, 2009 sufficiently established a Class III violation.
C. Class IV violations
This category consists of violations of Massachusetts WIC Program rules and the vendor agreement. Class IV violations result in the assignment of “sanction points,” which may lead to disqualification from the program for one year after the accumulation of 20 “sanction points.” Alternately, if the Class IV violations occur during the course of a single investigation in which other classes of violations occur, Defendant may impose the disqualification for the most serious violations. Here, that is the three-year disqualification imposed because of the Class II violations.
Defendant concluded Plaintiffs accumulated 80 “sanction points.” This total is the result of Plaintiffs committing eight violations that each carries 10 “sanction points.” Defendant found the violations to be:
1. Failing to fill in the purchase amount in the presence of the authorized WIC shopper before having the authorized WIC shopper sign the WIC check. Defendant asserted this violation occurred during each of *258 the four compliance buyer visits. Defendant concluded this amounted to a total of 40 “sanction points.”
2. Failing to disclose prices on items offered for sale. This violation occurred during the September 30,2009 compliance visit when the price of Kraft cheese and Goya beans were neither posted by sign nor marked on the items. A second incidence of the violation occurred during the October 12,2009 compliance visit when the price of Kellogg’s Com Flakes cereal, Kraft Cheese, and Goya beans were neither posted by sign nor marked on the items. Defendant concluded this amounted to a total of 20 “sanction points.”
3. Participating in activity or conduct that demonstrates lack of business integrity. This violation occurred during the October 27, 2009 compliance visit when the price of $4.29 posted for Kellogg’s Com Flakes cereal exceeded the highest price for that item specified on a price list that Plaintiffs submitted to Defendant on June 29, 2009. Defendant concluded this amounted to a total of 10 “sanction points."
4. Failing to stock and maintain the mandatory minimum inventory of approved WIC products. This violation occurred during May 13, 2008 when a WIC program inspector discovered several types of sizes of Nestle Good Start instant formula were not stocked on North End Market’s shelves. Defendant informed Plaintiffs of this violation and imposition of “sanction points” through a June 11, 2008 letter. Defendant concluded this amounted to a total of 10 “sanction points.”
Plaintiffs filed an appeal December 1, 2009 challenging its disqualification from the WIC program. A hearing within the Division of Administrative Law Appeals (DALA) was scheduled. Prior to the hearing, Plaintiffs filed two motions, which the DALA denied. In its first motion, Plaintiff sought to bar from evidence the June 11, 2008 letter, including evidence of the violation and the 10 “sanction points” Defendant imposed. Plaintiffs argued such evidence should not be allowed because it related to violations that occurred pursuant to an earlier vendor agreement, which Defendant had not introduced into evidence at the hearing.
Plaintiffs further contended in its first motion that while the warning letter may be a prerequisite for sanctioning subsequent Class II, III, or IV violations, they had no procedural manner to request either an administrative review of the warning letter or a fair hearing on its assertions. Plaintiffs argued this violated the 14th Amendment of the Constitution, Articles 1, 12, and 29 of the Massachusetts Declaration of Rights, and the Sixth Amendment’s “Confrontation Clause” as laid out in Commonwealth v. Melendez-Diaz, 129 S.Ct. 2537 (2009). Plaintiffs’ second motion sought to have the case dismissed on the same state and federal constitutional grounds. In denying those motions, the DALA found the warning letter relevant and probative at least to the Class IV violations because Defendant based its actions, at least in part, on the 2008 letter. DALA noted it did not decide Plaintiffs’ federal and state constitutional objections, concluding they were beyond its jurisdictional scope.
DALA conducted a hearing on June 24, 2010, during which Mary Blocksidge, the manager of the Massachusetts WIC Program Vendor Unit, and Plaintiff Emad Benyamin testified. The compliance buyer was allowed to testify anonymously in order to protect her identity.
During the hearing, Plaintiffs’ counsel questioned Benyamin and Blocksidge about whether there were other authorized WIC vendors to whom North End Market’s WIC customers could frequent if Plaintiffs were disqualified. That line of questioning was relevant only to the extent that it concerned “inadequate participant access” as a ground for imposing a civil monetary penalty instead of disqualification. Defendant maintained the vendor agreement gave it sole discretion in determining whether to impose a civil penalty instead of disqualification, and that its decision is not appealable. The DALA did not decide whether Plaintiffs could challenge Defendant’s imposition of disqualification instead of a civil penalty. However, the DALA did conclude that even if that determination was appealable, Plaintiffs did not show Defendant abused its discretion in imposing disqualification.
On September 23, 2010, DALA issued a 73-page decision upholding Defendant’s decision to terminate Plaintiffs’ WIC vendor agreement and disqualify Plaintiffs from participating in the program for three years.
DISCUSSION
Plaintiffs’ Motion for Judgment on the Pleadings is governed by G.L.c. 30A, §14 and Superior Court Standing Order 1-96. Pursuant to G.L.c. 30A, §14, this court may reverse, remand, or modify an agency decision if the “substantial rights of any party may have been prejudiced” because the agency decision is based on an error of law or on unlawful procedure, is arbitrary and capricious or unwarranted by facts found by the agency, or is unsupported by substantial evidence. Merisme v. Board of Appeal on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). The plaintiff bears the burden of demonstrating the invalidity of the agency decision. Bagley v. Contributory Retirement Appeal Bd., 397 Mass. 255, 258 (1986).
In reviewing an agency decision, the court is required to “give due weight to the expertise, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it” by statute. G.L.c. 30A, §14(7); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Reg. Vocational Sch v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). Nor may a court reject an administrative agency’s choice between two conflicting views, even though the court justifiably could have made a different choice had the matter been presented de novo. Zoning Bd. of Appeals v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982).
*259 Plaintiffs argue the DALA’s decision to uphold Defendant’s termination of the WIC agreement and disqualification of Plaintiffs from the program for three years was arbitrary and capricious. Plaintiffs further argued the use of the June 2008 letter violated Plaintiffs rights under the 14th Amendment of the U.S. Constitution, Articles 1, 12, and 29 of the Massachusetts Declaration of Rights, as well as the “Confrontation Clause” as described in Commonwealth v. Melendez-Diaz, 129 S.Ct. 2537 (2009). Plaintiffs also argue that DALA’s decision not to impose a civil pen-ally in lieu of disqualification was arbitrary.
The Court will address each of Plaintiffs’ arguments in turn:
A.Class II Violations
Plaintiffs argue no pattern of wrongdoing exists sufficient to sustain Class II violations. First, Plaintiffs claim the DALA wrongfully used the 2008 letter to establish a pattern of Class II violations. That argument is misplaced because the 2008 letter relates only to Class IV violations, and is irrelevant to the establishment of a pattern of Class II violations.[4] The DALA properly found a pattern of Class II violations through the existence of separate violations during four compliance visits. Substantial evidence supports such a conclusion, as each of the four compliance visits were conducted on different dates, involved different cashiers, and stemmed from distinct, though virtually identical, transactions.[5] Here, each visit resulted in a “single occurrence of a violation” perpetrated through the misuse of separate WIC checks during each visit. As there were “two or more incidences of a violation,” substantial evidence supports the determination that a pattern of violations is established.
Consequently, Plaintiffs’ second argument that the violations amounted to one continuous “mistake” is also without merit. Plaintiffs contend no pattern exists because Defendant didn’t send notice of each individual violations, which would have given Plaintiffs an opportunity to correct “mistakes” that it claims could “easily be attributed to inadvertence or at worst negligence.” Plaintiffs’ claim appears related to a provision in the vendor agreement that required Defendant to “notify a vendor in writing when an investigation reveals an initial violation for which a pattern of violations must be established in order to impose a sanction, before another such violation is documented.” However, the next clause of that provision — printed in bold — relieves Defendant of that obligation if it “determines that notifying the vendor would compromise its investigation.” Here, because an ongoing investigation existed, the lack of notice of individual violations is not a barrier to the establishment of a pattern of violations.
Summarily, the DALA’s conclusion that a pattern of Class II Violations exists sufficient to disqualify Plaintiffs from participation in the WIC program for three years is not arbitrary and capricious, and is instead based on substantial evidence.
B. Class III Violations
Plaintiffs argue the purchase of non-WIC approved cereal during one compliance visit amounted not to a pattern, but only to a single Class III violation. In response, the Defendant argues a pattern of Class III violations does exist because the compliance buyer was allowed to purchase Shredded Wheat cereal on September 30, 2009, as well as non-WIC authorized Kraft individually wrapped cheese singles on September 20, 2009. There is evidence in the administrative record that the compliance buyer was allowed to buy non-authorized cheese on September 20, 2009. However, Defendant’s November 23, 2009 notice to Plaintiffs indicating the termination of the vendor agreement listed only the September 30,2009 purchase of Shredded Wheat as the basis for the Class III violation. And, before affirming the violations in its written decision, the DALA mentions only the unauthorized Shredded Wheat purchase in its discussion of the Class III violations.
As the Class III violation found by the DALA is based on a single incident and not a requisite pattern, the conclusion that such a violation occurred is not based on substantial evidence.
C. Class IV Violations
Plaintiffs’ arguments regarding the June 2008 warning letter and imposition of “sanction points" are properly placed within the context of the Class IV violations. However, the Court need not rule on Plaintiffs’ arguments regarding the 2008 “sanction points” since even without counting them, Defendant has correctly established more than enough “sanction points” to disqualify Plaintiffs. Having said that, the Court finds Plaintiffs’ arguments regarding the 2008 letter are without merit.
Plaintiffs first argue the 10 “sanction points” from 2008 should not be considered because they were imposed during a different fiscal year, and subject to a different vendor’s agreement than the other violations. Plaintiffs posit no further argument supporting that assertion. The evidence in the administrative record, however, reflects that subject to the 2008 vendor agreement the “sanction points” imposed were to remain in effect for three years. That is well within the time in which the 2009 Class IV violations occurred. As such, the DALA’s decision to consider the 2008 “sanction points” was based on substantial evidence.
Similarly, Plaintiffs’ arguments that its state and federal constitutional rights were violated need not be analyzed. Even if they did require analysis, however, they would also fail. Plaintiffs claim the use of the 2008 letter violated its constitutional rights under the 14th Amendment of the United States Constitution, Articles 1, 12 and 19 of the Massachusetts Declaration of Rights, and the “Confrontation Clause” as laid out in Commonwealth v. Melendez-Diaz, 129 S.Ct. 2527, 2537 (2009). While Plaintiffs put forth little argument supporting its assertion of constitutional violations, the core of Plaintiffs’ claim appears to be that the lack *260 of an administrative procedure to appeal the 2008 letter violated its due process rights.
First, Plaintiffs’ reliance on Melendez-Diaz is improper. The “Confrontation Clause” of the Sixth Amendment ensures that “(i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” Melendez-Diaz, 557 U.S. at 309. Defendant in its opposition properly points out that “[t]here is no right of confrontation in civil proceedings.” Covell v. Dept. of Social Servs., 439 Mass. 766, 788 (2003). As this is not a criminal proceeding, Melendez-Diaz is not applicable.
Further, Plaintiffs’ due process arguments are similarly misplaced. The Supreme Court “consistently has held that some form of hearing is required before an individual is finally deprived of a property interest.” Mathews v. Eldridge, 424 U.S. 319, 333 (1976). However, due process, “unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.” Joint Anti-Fascist Refugee Comm. v. McGrath 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring). The Supreme Court has generally looked to three factors in determining what level of due process is applicable: “First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). In Massachusetts, “[procedural due process requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner.” Aime v. Commonwealth 414 Mass. 667, 674-75 (1993).
Here, Plaintiffs do not assert which, if any, property rights the 2008 letter jeopardized. Assuming for sake of argument that the property interest at stake is Plaintiffs’ ability or right to participate in the WIC program, the letter itself did not imperil any such interest. That is, no due process right was violated by the lack of an appeals process at that point. However, as soon as the arguable property right — the ability to participate in the WIC program — was implicated through the accumulation of sufficient “sanction points,” Plaintiffs were allowed to avail themselves of an administrative hearing and subsequently appeal to this Court. Plaintiffs had an opportunity to, and in fact did, challenge the use of the 2008 letter against it during both proceedings. Thus, the use of the letter in calculating the “sanction points” against Plaintiffs did not violate any constitutional rights to due process.
Finally, Plaintiff restates an argument made previously related to the Class II violations that the violations that occurred during the 2009 compliance buys amount to only a single violation because defendant did not notify plaintiff of the individual violations as they occurred in order that they may be corrected. For the reasons stated above regarding the Class II Violations, this argument also fails.
D. Inadequate Participant Access
Plaintiffs dispute the finding that its disqualification will not result in inadequate access for WIC participants, and further argue Defendant’s determination in that regard is appealable. The Court finds no reason to disturb the DALA’s conclusion that, even if the determination is appealable, Plaintiffs did not prove Defendant abused its discretion.
The DALA stated the plain language of the vendor agreement may reasonably be read to allow an appeal of the Defendant’s determination as to inadequate access. Upon appeal, the DALA ruled, Defendant enjoys a presumption that disqualification would not result in the public suffering inadequate access to WIC vendors. The DALA concluded that Plaintiff Emad Benyamin’s testimony that no other WIC vendors were in close proximity to North End Market overcame that presumption. However, the DALA then concluded that Defendant met its burden to show that disqualification would not result in inadequate public access through the testimony of Maria Blocksidge, the manager of the WIC Program Vendor Unit, and the submission of a list of 49 WIC vendors in the same geographic area.
Even if Defendant’s determination is appealable, which the Court need not decide, there is substantial evidence supporting the magistrate’s decision to sustain the disqualification.
ORDER
For the foregoing reasons, Plaintiffs’ Motion for Judgment on the Pleadings is ALLOWED as to the Class III Violations and DENIED as to the Class II Violations, Class IV Violations, and the issue of Inadequate Participant Access. Accordingly, the three-year termination and disqualification of plaintiffs is AFFIRMED.

 The compliance visits took place September 20, 2009, September 30, 2009, October 12, 2009, and October 27, 2009.

 A type 156A-1 WIC check entitled a purchaser to two gallons of milk, one dozen large eggs, 36 ounces of cereal or less, three (11.5 or 12 oz.) frozen, (46 oz.) canned, or (11.5 oz.) liquid concentrated juice. A type 156A-2 WIC check entitled a purchaser to 1 gallon milk, I pound cheese or less, 1 (18 oz.) peanut butter or 1 pound beans/peas, 2 (11.5 or 12 oz.) frozen, (46 oz.) canned, or (11.5 oz.) liquid concentrated juice.

 Defendant notes in its Opposition to Plaintiffs Motion for Judgment on the Pleadings that Plaintiff submitted for reimbursement what would have been the actual, total amount due if the compliance buyer had purchased every product authorized for purchase printed on the face of the check. The compliance buyer, however, always bought less than what was permitted.

 Plaintiffs make a similarly misplaced argument regarding the 2008 letter being used to establish a pattern of Class III Violations.

 The compliance buyers' descriptions of the cashiers from each visit are as follows:
September20. 2009: a 5’9" Middle Eastern male of medium build, balding with black and grey hair, aged approximately 45 years or older.
September 30. 2009: a 5'11" Middle Eastern male of medium build, balding with brown hair, aged approximately 35-40 years with a “large gap between two front teeth."
October 12. 2009: a 5’9" Middle Eastern male of medium build, age 45 years or older, balding with black and gray hair.
October27, 2009: a 5’2" white female with light brown hair, aged approximately 45 years or older, with pierced ears and a butterfly tattoo on her right wrist.