## Charlesbank Apartments, Inc. *vs.* Boston Rent Control Administration.

Suffolk. November 5, 1979. — January 25, 1980.

Present: Hennessey, C.J., Quirico, Kaplan, Wilkins, & Abrams, JJ.

*Housing. Rent Control. Boston. Statute,* Construction. *Municipal Corporations,* By-laws and ordinances. *Words,* "Subsidized."

Where the mortgage on a housing project was insured by a United States agency under § 221 (d) (3) of the National Housing Act, the project was subsidized within the meaning of § 1(e) of the Boston Rent Control Ordinance of 1975 and was, therefore, not exempted from rent control and other regulation under the ordinance. [636-639]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 16, 1979.

The case was heard by *Liacos,* J., on a motion for summary judgment.

*Kenneth R. Berman* for the plaintiff.

*Russell Fanara* for the defendant.

KAPLAN, J. The plaintiff Charlesbank Apartments, Inc., a private, nonprofit, charitable corporation, owner of an apartment development with 276 rental units located at 650 Huntington Avenue, Boston, commenced an action against the defendant Boston rent control administration (Rent Board) in this court for the county of Suffolk, seeking a declaration that it was exempt from rent control and other regulation under Boston's Rent Control Ordinance of 1975 (c. 15, Ordinances of 1975). After answer, the plaintiff moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), on the basis of the pleadings and an affidavit of one of its officers.[1] Affidavits were filed on

---

[1] Previously the Rent Board had moved to dismiss the action as inappropriate for the county court or to transfer it to the Superior Court. The motion was denied.

behalf of the Rent Board. No dispute emerged as to any material issue of fact; only a question of law remained. A single justice of this court granted summary judgment for the Rent Board, filing a memorandum in explanation.[2] Upon consideration, we affirm.

As a qualifying provider of housing for low and moderate income families, the plaintiff in 1968 had its mortgage on the Charlesbank property insured by a United States agency. The mortgage, which had been placed by a private bank, was in the amount of $4,486,800 with interest at market rates. It is still outstanding. The insurance was furnished under § 221(d)(3) of the National Housing Act, as amended (12 U.S.C. § 1715[l][d][3][1979]).[3] There is no doubt that the Boston Rent Control Ordinance of 1972 (c. 19, Ordinances of 1972) applied to this housing and controlled the rents that could be charged, but the plaintiff's contention, raised in the present action, was that the fact of the § 221(d)(3) insurance had the consequence of exempting the housing from rent control under the ordinance of 1975.

Section 1(e) of that ordinance embraced broadly Boston's "housing accommodation[s]" (as defined), but then exempted a described category, with certain exceptions, as follows:

"not including the following: (i) housing accomodations which the United States or the Commonwealth of Massachusetts or any authority created under the laws thereof either owns, or operates, or finances or subsidizes or insures the mortgage thereon, or regulates the individual rents thereof; except the housing accommo-

---

[2] On a party's motion for summary judgment, judgment may pass for his opponent if the record warrants it, even in the absence of a cross motion for that relief. Rule 56 (c) states in part: "Summary judgment, when appropriate, may be rendered against the moving party."

[3] The mortgage had actually been first placed in 1961 and insured by the government at the time under a different statutory reference which need not be considered here. A 1977 supplemental insured mortgage of $256,400 is also irrelevant to the present case.

dations subsidized under section 202, 221(d) or 236 of the National Housing Act as amended."

The plaintiff resists having its housing ascribed to the "except" language, arguing that, whereas the 1968 transaction was under § 221(d), it was insurance, not a subsidy, and the exempting language (the words preceding "except") used both terms (in the form of "subsidizes or insures") and therefore distinguished implicitly between the two. This argument seeks a narrow definition of subsidy as something on the order of an actual grant of public money to a private interest, and opposes a more ample definition, also available in the dictionaries, which would take in other forms of public aid to private transactions.[4]

We may say preliminarily, on the face of the text, that the draftsman probably was not holding to the plaintiff's proposed line. He did not refer merely to § 221(d)(3), but to all of § 221(d). Section 221(d), besides providing in subdivision (3) for insurance at a premium of mortgages bearing market rates of interest, also, through subdivision (5), allows the Secretary of the Department of Housing and Urban Development (HUD) effectively to set interest rates payable by the mortgagors on insured mortgages at less than market rates. See regulations at 24 C.F.R. § 221.518(b) (1979). The latter low-interest arrangement, according to the plaintiff, does constitute a subsidy. Yet a draftsman of the 1975 ordinance who was recognizing the plaintiff's suggested distinction might be expected to point in the "except" clause to

---

[4] Thus the single justice noted that while Black's Law Dictionary 1596-1597 (4th ed. 1968) provided a strict definition of "subsidy" as a grant of money, Webster's Second New International Dictionary 2513 (1959) had "subsidize" also mean more broadly "[t]o aid or promote, as a private enterprise, with public money," which could extend to such an aid as insurance. The Oxford English Dictionary (vol. 10, 1933), sub nom. "subsidy," gives the basic meaning "Help, aid, assistance," and goes on to a number of meanings including "A grant or contribution of money," and "Financial aid furnished by a state or public corporation in furtherance of an undertaking or the upkeep of a thing."

the relevant part or aspect of § 221(d) rather than to invite obscurity and contention by referring to (d) generally.[5]

The impression that no fine line was being drawn between insurance and subsidy is reinforced by examining the predecessor ordinance of 1972 to which the draftsman would naturally have adverted. See 2A C. Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1973). This ordinance at four places among its preambles or statements of purpose refers to "federally subsidized housing under the 207, 220, 221(d)(3) and 236 programs" (with two similar references in its § 13[a] and [b]), and in its definitional section (§ 1[e]) it speaks of buildings, etc., "constructed with federal financial assistance under the 202, 207, 220, 221(d)(3) and 236 programs." Here are references to the 221(d)(3) program as federally subsidized housing and as fitting into a generic class of housing with Federal financial assistance. It would appear that the focus was no sharper in 1975 than in 1972, and that insurance through § 221(d)(3) was looked upon in both ordinances as a kind of subsidy.[6]

A parsing of the language of the ordinance, then, tends to favor the Rent Board. So do more general considerations as developed by the single justice. The 1975 ordinance fell into a period when the city of Boston held to a general policy of controlling rents (to alleviate, as the preamble stated, "a substantial and critical shortage of safe, decent, and reason-

---

[5] The plaintiff mentions the regulation 24 C.F.R. § 403.8 (1979) (regarding Federal preemption) which distinguishes between "unsubsidized insured projects" and "subsidized insured projects," but there is no indication that that regulation influenced the drafting of the 1975 ordinance. Indeed, if the draftsman of that ordinance adverted to the regulation, he refused to accept its language and apparently rejected the distinction by citing the inclusive § 221(d) of the National Housing Act, as amended. (We should note, incidentally, that there is no claim of Federal preemption in the present case.)

[6] This does not involve any strain. As the Rent Board suggests, if Federal insurance under § 221(d)(3) did not involve some benefit or bounty to the mortgagor, it would not have sought insurance from that source, which entailed submission of the project to substantial Federal regulation of various sorts.

ably priced rental housing accommodations") but was moving toward decontrol, which remained the specially exempted category. A familiar canon of interpretation would suggest that in case of doubt the perceived general policy should be favored over the exemption (cf. *Woods* v. *Oak Park Chateau Corp.*, 179 F.2d 611, 614 [7th Cir. 1950]), which can be accomplished here by reading subsidy in the less rigorous sense.

From another point of vantage, there is significance in the thought or policy that connected the triad of programs mentioned in the "except" clause, those under §§ 221(d), 202 (12 U.S.C. § 1701[q][1979]) (below market interest loans for certain sponsors of housing for elderly or handicapped persons), and 236 (12 U.S.C. § 1715[z-1] [1979]) (payments to mortgagees to reduce interest costs on insured mortgages covering housing projects for elderly, handicapped, or displaced persons). All were intended to provide housing assistance to persons disadvantaged by reason of the level of their income, which might be aggravated by their being handicapped, displaced, or elderly. It would take more than appears here to show a design to carve out of the disadvantaged class who were to be saved from decontrol of their rents, a group identified only because of the particular terms of the relevant mortgage insurance. And, further, as the "except" clause had evidently a beneficent purpose consistent with the main body of the ordinance which was responsive to a declared emergency, it should be read liberally rather than restricted by oversubtle interpretation. See *M. Lasden, Inc.* v. *Decker Electrical Corp.*, 372 Mass. 179, 183 (1977); *Young* v. *Duncan*, 218 Mass. 346, 349 (1914).

*Judgment affirmed.*