ZONING BOARD OF APPEALS OF WELLESLEY *vs.* HOUSING APPEALS COMMITTEE & others.[1]

Norfolk. January 6, 1982. — March 26, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Housing. Zoning*, Low and moderate income housing, Housing Appeals Committee. *Administrative Law*, Judicial review. *Words*, "Subsidy."

A regulation of the Department of Community Affairs which included housing financed by the Massachusetts Housing Finance Agency within the definition of low or moderate income housing in G. L. c. 40B, § 20, was reasonable and consistent with the statute, and, consequently, the Housing Appeals Committee of the department correctly determined that a particular development, financed by the Massachusetts Housing Finance Agency, which included units to be rented at fair market value, was within its jurisdiction. [654-656]

Substantial evidence before the Housing Appeals Committee in the Department of Community Affairs in a proceeding under G. L. c. 40B, §§ 20-23, supported its decision ordering a municipal zoning board of appeals to grant a comprehensive permit for the construction of low or moderate income housing. [656-659]

CIVIL ACTION commenced in the Superior Court Department on March 26, 1981.

The case was heard by *Steadman, J.*, on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Albert S. Robinson*, Town Counsel, for the plaintiff.

*Joan C. Stoddard*, Assistant Attorney General (*Thomas A. Barnico*, Assistant Attorney General, with her) for Housing Appeals Committee.

*Albert Auburn* for Joseph T. Murphy & another.

---

[1] The other defendants are Albert Auburn and Joseph T. Murphy, the general partners of Cedar Street Associates.

*Arnold P. Messing, Barbara J. Rouse & Mark S. Swartz,*
for Massachusetts Housing Finance Agency, amicus curiae,
submitted a brief.

ABRAMS, J.  We granted the plaintiff's application for
direct appellate review to determine whether a develop-
ment, financed by the Massachusetts Housing Finance
Agency (MHFA), which includes units that will be rented at
fair market value, is low or moderate income housing with-
in the meaning of G. L. c. 40B, § 20.  After hearing, the
Housing Appeals Committee in the Department of Com-
munity Affairs (HAC) ordered the zoning board of appeals
of the town of Wellesley (board) to grant a comprehensive
permit for the construction of low or moderate income
housing.[2]  See G.L. c. 40B, §§ 20-23.  The board sought ju-
dicial review of HAC's determination that a comprehensive
permit should issue.  On cross motions for summary judg-
ment (see Mass. R. Civ. P. 56 [a], [b], 365 Mass. 824
[1974]), a judge of the Superior Court declared that "the
Legislature never intended that a proposed development be
exclusively reserved for low and moderate income families
to qualify as low and moderate income housing."  He there-
fore determined that "this proposed development meets the
requirements set forth in G. L. c. 40B, s. 20 and c. 708 of
the Acts of 1966."  He entered two judgments in favor of the
defendants.  We affirm the judgments.

The facts are as follows.  On July 11, 1977, pursuant to
G. L. c. 40B, §§ 20-23, Cedar Street Associates (Cedar
Street), a limited dividend organization, applied for a com-
prehensive permit to build forty-eight units of low or mod-
erate income housing.  After a public hearing, the board,
on November 10, 1977, granted Cedar Street a comprehen-
sive permit to build thirty-six units, on condition that at

---

[2] "Low or moderate income housing" is "any housing subsidized by the
federal or state government under any program to assist the construction
of low or moderate income housing as defined in the applicable federal or
state statute, whether built or operated by any public agency or any non-
profit or limited dividend organization."  G. L. c. 40B, § 20, inserted by
St. 1969, c. 774, § 1.

least eighty per cent of the units be occupied by the elderly. In addition, the board required evidence, within twelve months, that Cedar Street had received the necessary financing. Later, the board granted Cedar Street's request for a four-month extension of this deadline.

Cedar Street obtained a loan from MHFA. The loan was made subject to several conditions. The development would have to provide only ten rent subsidized units for the elderly. In addition, the developer would have to include eight rent-subsidized units for families, and eighteen units for rental at market rates. Notified of these conditions, the board required Cedar Street to file a new application for a comprehensive permit.

On June 29, 1979, Cedar Street filed a second application. The board denied this application. The board found that the area of the proposed site was not equipped to provide the facilities necessary for a high density population; that the project was detrimental to the health and safety of the anticipated occupants and their neighbors; and that the planning objections incidental to the development outweighed the need for low or moderate income housing.

Pursuant to G. L. c. 40B, § 22, Cedar Street appealed the board's decision to HAC. Cedar Street claimed that the board's decision was not reasonable and consistent with local needs, and asked HAC to direct the board to issue a comprehensive permit.

The board moved to dismiss the appeal on the ground that HAC lacked jurisdiction over the subject matter. The board argued that the development includes eighteen units to be rented at fair market value, and therefore is not low or moderate income housing within the meaning of G. L. c. 40B, § 20. HAC denied the board's motion and ruled that since MHFA financed the project, the development is low or moderate income housing within the meaning of § 20.

Reaching the merits, HAC held that the board's decision was not reasonable and consistent with local needs and directed the board to issue a comprehensive permit. HAC noted that basically the same planning objections had exist-

ed when the board granted Cedar Street's first application for a permit.

1. *Low or moderate income housing.* General Laws c. 40B, § 20, inserted by St. 1969, c. 774, § 1, defines low or moderate income housing as "housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing as defined in the applicable federal or state statute." Thus, low or moderate income housing must be subsidized under a program whose purpose is to aid the construction of low or moderate income housing as defined.

In *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339 (1973), we recognized that the details of G. L. c. 40B, §§ 20-23, would have to be spelled out "in the first instance, by an agency charged with administration of the statute." *Board of Appeals of Hanover, supra* at 368 n.20, quoting *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964). Subsequently, the Department of Community Affairs promulgated regulations under the statute. These regulations provide that "[l]ow or moderate income housing shall include without limitation units of housing constructed under . . . MHFA Mortgage Loans . . . ." 760 Code Mass. Regs. 30.02 (i) (2) (1978).

Although administrative regulations are not binding on this court, we give great weight to a "reasonable construction of a regulatory statute adopted by the agency charged with [its] enforcement." *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972), quoting *Investment Co. Inst.* v. *Camp*, 401 U.S. 617, 626-627 (1971). See *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 515-516 (1975); *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 491-492 (1978). "[W]e must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate. *Colella* v. *State Racing Comm'n* [360 Mass. 152, 156-157

385 Mass. 651                                      655

Zoning Board of Appeals of Wellesley *v.* Housing Appeals Committee.

(1971)]. *Perkins* v. *Westwood*, 226 Mass. 268 (1917)." *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977).

The Legislature established MHFA to provide mortgages to projects which "have promise of supplying well planned, well designed apartment units . . . for low income persons or families." St. 1966, c. 708, § 5 (a). The intention of the Act "is to make available mortgage financing at favorable interest rates to housing projects in which [at least] one quarter of the tenants will be in the 'low income' category and the other tenants will be of moderate income. . . . The saving in interest is to be applied in part . . . to making possible lower rentals to 'low income' tenants, who may also receive the benefit of rent subsidies . . . ." *Massachusetts Hous. Fin. Agency* v. *New England Merchants Nat'l Bank*, 356 Mass. 202, 209 (1969).

The legislative history of St. 1966, c. 708, supports the view that MHFA was created to promote the construction of low or moderate income housing projects which also include units rented at fair market value. The Final Report of the Special Commission on Low-Income Housing, 1965 House Doc. No. 4040, recommended the creation of MHFA. The commission specifically suggested that MHFA require developers to reserve only a portion of their units for low income families. "By doing this, low-income families will be allowed to live in decent apartments, without identification, in close proximity to families of differing economic and social levels." 1965 House Doc. No. 4040, at 39. Thus, MHFA is a program whose purpose is to aid the construction of low or moderate income housing, although such projects may include units rented at fair market rates.

Further, subsidy is "[h]elp, aid, [or] assistance." The Oxford English Dictionary (vol. 10, 1933). See Webster's New Int'l Dictionary 2513 (2d ed. 1959). See also *Charlesbank Apartments, Inc.* v. *Boston Rent Control Administration*, 379 Mass. 635, 637 n.4 (1980). In *Charlesbank Apartments, Inc., supra*, we held that a Federal program that

merely provided mortgage insurance was a subsidy under Boston's rent control ordinance. Similarly, we believe that a low interest mortgage from MHFA is a subsidy under G. L. c. 40B, § 20. Housing financed by MHFA is subsidized under a State program whose purpose is to aid the construction of low or moderate income housing.

Consequently, we hold that the regulation promulgated by the Department of Community Affairs which includes MHFA financed projects within the definition of low or moderate income housing in G. L. c. 40B, § 20, is reasonable and consistent with the statute. Thus HAC correctly determined that the Cedar Street development was within its jurisdiction.

2. *Substantial evidence.* Pursuant to G. L. c. 40B, §§ 20-23, a qualified builder[3] wishing to build low or moderate income housing may file with a local board of appeals an application for a comprehensive permit instead of filing separate applications with each local agency having jurisdiction over the project. Rodgers, Snob Zoning in Massachusetts, 1970 Ann. Survey Mass. Law 487, 489. In deciding whether to issue a comprehensive permit, the local board must determine whether the project is "consistent with local needs." *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 364 (1973).

If the board denies an application for a comprehensive permit, the developer may appeal to HAC. G. L. c. 40B, § 22. Subsequent to the appeal, HAC will conduct a de novo review, to determine whether the board's decision is "reasonable and consistent with local needs." G. L. c. 40B, § 23. See *Board of Appeals of Hanover, supra* at 369. To make this determination, HAC must decide whether the need for low or moderate income housing outweighs the valid planning objections to the proposal such as health, site, design, and space. G. L. c. 40B, §§ 20-23. See *Board*

---

[3] A qualified builder is a public agency, limited dividend organization, or nonprofit organization. G. L. c. 40B, § 21. Since Cedar Street is a limited dividend organization, it is a qualified builder.

385 Mass. 651                                        657

Zoning Board of Appeals of Wellesley v. Housing Appeals Committee.

*of Appeals of Hanover, supra* at 363-368. If, after applying this standard, HAC finds that the decision of the board is not "reasonable and consistent with local needs," it may direct the board to issue a comprehensive permit. G. L. c. 40B, § 23. *Board of Appeals of Hanover, supra* at 372-375. However, if a locality has met its minimum housing obligation,[4] HAC may not order the board to issue a permit. *Id.* at 367. See Comment, Exclusionary Zoning: A Legislative Approach, 22 Syracuse L. Rev. 583, 592-594 (1971). The board claims that HAC's decision ordering the issuance of a comprehensive permit in this case is unsupported by substantial evidence as that term is used in G. L. c. 30A. The scope of judicial review is determined by G. L. c. 30A, § 14. See G. L. c. 40B, § 22.

The decision of HAC must be upheld if it is supported by substantial evidence. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. G. L. c. 30A, § 1 (6). "This does not permit a court to treat the proceeding as a trial de novo on the record which was before the administrative board. A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. *Universal Camera Corp.* v. *National Labor Relations Bd.*, 340 U.S. 474, 488 [1951]." *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). See *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n*, 377 Mass.

---

[4] A locality has fulfilled its minimum housing obligation "where (1) low or moderate income housing exists which is in excess of ten per cent of the housing units reported in the latest decennial census of the city or town or on sites comprising one and one half per cent or more of the total land area zoned for residential, commercial or industrial use or (2) the application before the board would result in the commencement of construction of such housing on sites comprising more than three tenths of one per cent of such land area or ten acres, whichever is larger, in any one calendar year." G. L. c. 40B, § 20. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 366 (1973).

658                                                     385 Mass. 651

Zoning Board of Appeals of Wellesley *v.* Housing Appeals Committee.

897, 903 (1979); *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 120 (1978).

The board concedes that Wellesley has not met its minimum housing obligation,[5] and that there is an absolute need for more apartments that persons of low or moderate income can afford. Nevertheless, the board claims, contrary to the HAC decision, that its denial of the comprehensive permit was both reasonable and consistent with local needs. The board argues that because one half of the units in the development will be rented at market rates, the project's contribution to low and moderate income housing does not outweigh the planning objections incidental to the development. The board asserts that this project will result in a concentration of low or moderate income housing projects in one part of town. In addition, the board claims that the project will exacerbate traffic problems in the area being developed.

There is ample evidence to support HAC's conclusion that the board's action was not reasonable and consistent with local needs. Although similar planning objections had been raised, the board granted Cedar Street's first application for a comprehensive permit to build thirty-six units of subsidized housing, on the condition that at least eighty percent of the units be occupied by the elderly. Since the project at issue in this case includes rent-subsidized units and units rented at fair market rates, it does not greatly promote the concentration of low or moderate income families in one area. Moreover, HAC inspected the site, as did MHFA. We conclude that HAC's decision is supported by substantial evidence and therefore the judgments of the Superior Court must be affirmed.

Further, HAC applied the correct standard when it balanced the need for low or moderate income housing against

[5] At the hearing before HAC, the chairman of the Wellesley planning board testified that Wellesley had approximately 397 units of low or moderate income housing. According to him, Wellesley needs 800 units to fulfil its minimum housing obligation.

the planning board's objections to the proposal.[6] Although this development contains units rented at fair market rates, the entire project is low or moderate income housing.[7] In reviewing a denial of a comprehensive permit to build low or moderate income housing, HAC must determine whether the board's decision was "consistent with local needs."[8] Whenever HAC reviews the denial of a comprehensive permit, it must apply this statutory standard even if the project includes units rented at fair market rates.

*Judgments affirmed.*

---

[6] The board articulated objections concerning increased sewerage, drainage and traffic problems. There was ample oral evidence to support HAC's determination that the project would cause no serious health hazards. In addition, as to traffic, HAC noted the "silence of the Board's previous decision" on traffic congestion and concluded that the board's objection on this ground was specious.

[7] The statute treats all low or moderate income housing projects in the same manner whether or not they include units to be rented at fair market rates. See G. L. c. 40B, § 20. All the units in a low or moderate income housing development, whether or not they receive rent subsidies, count toward a municipality's minimum housing obligation. Thus, Wellesley will receive full credit for all thirty-six units in this development, including the eighteen units that will be rented at market value. HAC has held invalid its own regulation which provided that only rent-subsidized units should be counted for purposes of determining whether a locality has fulfilled its housing obligation.

[8] "[R]equirements and regulations shall be considered consistent with local needs if they are reasonable in view of the regional need for low and moderate income housing considered with the number of low income persons in the city or town affected and the need to protect the health or safety of the occupants of the proposed housing or of the residents of the city or town, to promote better site and building design in relation to the surroundings, or to preserve open spaces, and if such requirements and regulations are applied as equally as possible to both subsidized and unsubsidized housing. Requirements or regulations shall be consistent with local needs when imposed by a board of zoning appeals after comprehensive hearing in a city or town" that has met its minimum housing obligation. G. L. c. 40B, § 20. See note 4, *supra*.