TOWN OF MILTON ZONING BOARD OF APPEALS vs. THE MASSACHUSETTS HOUSING APPEALS COMMITTEE, MISC 19-000037

































 
 TOWN OF MILTON ZONING BOARD OF APPEALS, Plaintiff, v. THE MASSACHUSETTS HOUSING APPEALS COMMITTEE and HD/MW RANDOLPH AVENUE, LLC, Defendants
 MISC 19-000037 
 JULY 30, 2021
NORFOLK, ss.
FOSTER, J.
MEMORANDUM AND ORDER ALLOWING IN PART AND DENYING IN PART MOTIONS FOR JUDGMENT ON THE PLEADINGS














 Introduction 





 General Laws c. 40B, §§ 20-23, and the attendant regulations of the Department of Housing and Community Development (DHCD) establish a process by which qualified developers (qualified by the agency MassHousing) can apply for and obtain a comprehensive permit from a town's zoning board of appeals to construct an affordable housing project when the town is below a certain threshold of affordable housing units, all as defined by the statute and regulations. Defendant HD/MW Randolph Avenue, LLC (HD/MW) is such a qualified developer, having obtained a project eligibility letter from MassHousing. It applied to the plaintiff Town of Milton Zoning Board of Appeals (the Board) for a comprehensive permit to construct a 90-unit project with 23 affordable residential units on a parcel on Randolph Avenue in Milton. The Board granted the comprehensive permit with a series of conditions. 





 Chapter 40B provides for when a developer can appeal a decision on a comprehensive permit. Of course, the developer can appeal a denial. G.L. c. 40B, § 22. But a developer may also appeal a grant of a comprehensive permit with conditions if the conditions "make the building or operation of such housing uneconomic." Id. That is what HD/MW did. It appealed the Board's comprehensive permit to the defendant Massachusetts Housing Appeals Committee (HAC). After evidence and hearing, HAC annulled or revised multiple conditions in the comprehensive permit. The Board has appealed HAC's decision to this court under G.L. c 30A, §14, and G.L. c. 40B, § 22. The parties have filed cross-motions for judgment on the pleadings. 





 An appeal to HAC on the grounds of uneconomic conditions requires two showings. First, HD/MW was required to establish that the comprehensive permit conditions of which it complained rendered its project uneconomic. G.L. c. 40B, § 23. If HD/MW made that showing, the burden shifted to the Board to show that the conditions "are consistent with local needs." Id. HAC found that the HD/MW had made the first showing, and, after consideration, the court finds (a) that the Board waived its argument on this issue as it did not raise it below, and (b) that even if it had not waived its argument, HAC's analysis was correct. With respect to HAC's modification of the conditions, the court finds that all of its modifications are supported by substantial evidence in the record except with respect Conditions 18 and 19, concerning long term affordability. That portion of HAC's decision will be annulled and remanded to HAC for further evidence and hearing and additional subsidiary findings.





Procedural History 





 The Board filed its complaint on January 18, 2019, naming as defendants HAC and HD/MW. The complaint is an appeal of a decision of HAC under G.L. c. 30A, § 14. The case management conference was held on March 18, 2019, at which answers from the defendants were waived. [Note 1] 





 The administrative record was filed on May 31, 2019. On June 17, 2019, Plaintiff Town of Milton Board of Appeals' Motion for a View or, Alternatively, Leave to Present Additional Evidence (Motion for View or Additional Evidence) was filed. Defendant, HD/MW Randolph Avenue LLC's Opposition to Plaintiff's Motion for a View or, Alternatively, Leave to Present Additional Evidence was filed on July 15, 2019, and the Opposition of the Massachusetts Housing Appeals Committee to Plaintiff Town of Milton Board of Appeals' Motion for a View or, Alternatively, Leave to Present Additional Evidence was filed on July 16, 2019. The Motion for View or Additional Evidence was heard on July 24, 2019, and denied. 





 On August 19, 2019, the Board filed Plaintiff Town of Milton Board of Appeals' Motion for Judgment on the Pleadings (Board MJOP) and Plaintiff Town of Milton Board of Appeals' Memorandum in Support of its Motion for Judgment on the Pleadings (Board Memorandum). On January 9, 2020, HD/MW filed Defendant, HD/MW Randolph Avenue, LLC's Cross-Motion for Judgment on the Pleadings to Uphold the December 20, 2018 Decision of the Massachusetts Housing Appeals Committee (HD/MW MJOP) and Defendant, HD/MW Randolph Avenue, LLC's Memorandum in Opposition to Plaintiff, Town of Milton Board of Appeals' Motion for Judgment on the Pleadings and in Support of its Cross-Motion for Judgment on the Pleadings, and HAC filed Massachusetts Housing Appeals Committee's Opposition and Cross-Motion to Town of Milton's Motion for Judgment on the Pleadings (HAC MJOP). On March 9, 2020, the Board filed Plaintiff Town of Milton Board of Appeals' Reply Memorandum in Support of its Motion for Judgment on the Pleadings. The Board MJOP, HD/MW MJOP, and HAC MJOP were heard on June 5, 2020, and taken under advisement. This Memorandum and Order follows. 





Standard of Review 





 A decision by HAC is subject to review under the provisions of G.L. c. 30A. G.L. c. 40B § 22. In reviewing a decision under G.L. c 30A, §14, the court is confined to the record, except in limited circumstances not applicable here. G.L. c. 30A, §§ 14(5), (6). A court may set aside or modify a HAC decision if it was made "in excess of the statutory authority or jurisdiction of the agency," "based upon error of law," "unsupported by substantial evidence," "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law." G.L. c. 30A, §§ 14(7)(b)-(g); Eisai, Inc. v. Housing Appeals Comm., 89 Mass. App. Ct. 604 , 610 (2016). "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G.L. c. 30A, § 1 (6). In determining whether an administrative agency's decision is "supported by substantial evidence, one must examine the entire administrative record and take into account whatever detracts from its weight." Pyfrom v. Commissioner of the Dep't of Pub. Welfare, 39 Mass. App. Ct. 621 , 624-625 (1996), citing New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456 , 466 (1981). 





 The Board has the burden of demonstrating the invalidity of the agency's actions. Middleborough v. Housing Appeals Comm., 449 Mass. 514 , 524 (2007). The reviewing court is to afford all rational presumptions in favor of the validity of the agency's actions. Id. Additionally, the reviewing court cannot declare an agency's actions void unless "its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844 , 855 (1977), citing Colella v. State Racing Comm'n, 360 Mass. 152 , 156 (1971); see Perkins v. Westwood, 226 Mass. 268 , 271 (1917). A reviewing court will give the highest importance to the statutory language in order to determine legislative intent. Middleborough, 449 Mass. at 523, citing Hoffman v. Howmedica, Inc., 373 Mass. 32 , 37 (1977). If the statutory language is not clear as to the statutory intent, the construction is to be determined by the agency charged with the administration of the statute, and the highest deference is given to agency's interpretation of the governing statute. Id.; see Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm., 385 Mass. 651 , 654 (1982) ("Wellesley I"); Board of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339 , 368 n.20 (1973). A reviewing court will give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G.L. c. 30A § 14 (7); Esai, Inc., 89 Mass. App. Ct. at 617. 





Facts 





 The following facts appear from the administrative record (A.R.). Other relevant facts from the administrative record are reserved to the discussion. 





 1. On November 3, 2014, MassHousing issued a Project Eligibility Letter under G.L. c. 40B for HD/MW's proposal for a two-building, ninety-unit affordable housing project in Milton, Massachusetts (the Project). A.R. 1726-1727, 4407. 





 2. On or about November 6, 2014, HD/MW applied to the Board for a comprehensive permit to build the Project on land at 693-711 Randolph Avenue in Milton, Massachusetts (Project site). A.R. 1728-1853, 4406.





 3. The Project, as proposed, consists of two buildings, each approximately forty-five feet high. There is proposed a total of ninety residential units, of which twenty-three will be low or moderate income, eighty-three garage parking spaces, seventy-three outdoor spaces, and a fifteen-foot-high retaining wall. A.R. 1734, 1869, 2420-2422, 2600, 2806- 2813, 4408-4409. 





 4. The Project site is approximately 7.81 acres; 1.93 of those acres are wetlands, leaving 5.88 acres of buildable land. A.R. 2418, 4407-4408. 





 5. The only access point to the Project site would be a to-be-built driveway that would cross over the wetlands on the Project site. A.R. 2418-2421, 4408. 





 6. The neighborhood of the Project site is predominantly residential. A.R. 4408. 





 7. Between December 2, 2014, and June 17, 2015, the Board held eleven public hearings concerning HD/MW's application for a comprehensive permit. A.R. 2597. 





 8. The Board granted the comprehensive permit with conditions on July 30, 2015 (comprehensive permit). A.R. 2595, 4406. 





 9. On August 18, 2015 HD/MW filed an appeal with HAC, entered as HAC proceeding No. 2015-03, HD/MW Randolph Avenue, LLC v. Milton Board of Appeals (appeal), arguing that certain conditions imposed by the Board in the comprehensive permit rendered the Project uneconomic. A.R. 3360-3430, 4406. 





 10. The relevant conditions to which HD/MW objected were: Condition 2, limiting the Project to 35 units; Condition 5, requiring a 50-foot vegetated buffer area; Condition 6, requiring that the Project be broken up into smaller buildings; Condition 10, limiting construction with regard to the wetland areas; Condition 11, requiring any stormwater facility be located at least 20 feet away from any building; Conditions 18 and 19, requiring that HD/MW agree to maintain low and moderate income housing in the event the that the agreement with the subsidizing agency is terminated, expires, or is otherwise no longer in effect and not replaced; Condition 22, requiring more elevators; Condition 23, requiring the design to reflect the architectural styles of the surrounding neighborhood; Condition 25 requiring HD/MW to retain mature trees on the property; and Condition 28 requiring a looped driveway. A.R. 2607-2615, 3360-3430; Board Memorandum at 25-27, 29-30, 31, 32, 33-35. 





 11. Following the submission of pre-filed direct testimony from 20 witnesses, a site visit, and a four-day hearing, HAC issued a decision in the appeal on December 20, 2018, striking or modifying the above conditions (decision). A.R. 4406-4472. 





Discussion 





 An applicant, like HD/MW, who was granted a comprehensive permit with conditions has the right to appeal to HAC if the Project is "granted with such conditions and requirements as to make the building or operation of such housing uneconomic." G.L. c. 40B, § 22. HAC's hearing on such an appeal is "limited to the issue of . . . , in the case of an approval with conditions and requirements imposed, whether such conditions and requirements make the construction or operation of such housing uneconomic and whether they are consistent with local needs." G.L. c. 40B, § 23. The Board first argues that HAC erred in finding that the comprehensive permit's conditions rendered the Project uneconomic. In making this argument, the Board points to DHCD guidelines. These guidelines define the "return on total cost" (ROTC) for any project as the projected net operating income of the project divided by the projected total development cost. A.R. 742. They set a standard for the "minimum return on total cost" of any project. This is measured as an ROTC "that is less than the sum of the ROTC Threshold Increment [as of December 2014, 450 basis points] and the Applicable Ten-Year U.S. Treasury Rate." A.R. 741, 745. The guidelines then provide that any conditions that cause a project's ROTC to fall below the minimum ROTC are, by definition, uneconomic. A.R. 741. It is undisputed that when the Project was proposed to the Board, the ROTC of the Project was below the minimum ROTC. A.R. 2768. The Board now argues for the first time that because the Project was already below the minimum ROTC, it was uneconomic from the beginning, and, therefore, HD/MW could not demonstrate that any of the Board's conditions rendered the Project uneconomic. 





 The Board also objects to HAC's finding that the Board's prohibition on three-bedroom units prevented HD/MW from receiving funding from MassHousing and that condition rendered the project uneconomic, regardless of the ROTC analysis. The Board argues that there was no such prohibition on three-bedroom units and that it made this clear to HAC. A.R. at 3758-59; 4418. 





 These arguments raises four distinct issues. First, is the requirement under §§ 22 and 23 that the conditions render the Project uneconomic a matter of subject matter jurisdiction? Second, if not, did the Board waive its argument regarding the minimum ROTC? Third, did HAC err in finding that the conditions of the comprehensive permit rendered the Project uneconomic? Fourth, did HAC err in finding that the Board prohibited three-bedroom units in the Project? These questions are addressed in turn. 





 I. Jurisdictional Argument 





 The Board first argues that the standard in §§ 22 and 23 that a project proponent must demonstrate to HAC that conditions render a project uneconomic is a jurisdictional requirement. Therefore, the Board maintains, its argument that the Project is already uneconomic because it is below the ROTC is a question of subject matter jurisdiction. The Board is incorrect. The requirement that HD/MW demonstrate that the conditions render the project uneconomic is "a necessary element of the developer's prima facie case for relief." Board of Appeals of Woburn v. Housing Appeals Comm., 451 Mass. 581 , 590-591 (2008). It is not a jurisdictional requirement. See Middleborough, 449 Mass. at 520-521 (fundability requirement is not jurisdictional but rather part of prima facie case for comprehensive permit). As part of HD/MW's prima facie case before HAC, whether the conditions render the Project uneconomic is one of the issues before HAC on appeal, and one on which HD/MW had the burden of proof. 760 CMR 56.07(1)(c)(1), (2)(a)(3). Only if HD/MW met that burden of proof would the Board then have to show that its conditions are consistent with local needs. Board of Appeals of Woburn, 451 Mass. at 591. 





 II. Waiver 





 The reason it matters that the uneconomic conditions requirement is not jurisdictional, but is rather a part of HD/MW's prima facie case, is that while subject matter jurisdiction cannot be waived, an argument on the claim can. In other words, a failure to raise an issue concerning uneconomic conditions before HAC would constitute a waiver of that argument before this court. Albert v. Municipal Court of Boston, 388 Mass. 491 , 493-494 (1983), citing Shamrock Liquors, Inc. v. Alcoholic Beverages Control Comm'n, 7 Mass. App. Ct. 333 , 335 (1979). Because the issue is nonjurisdictional, a party is not entitled to raise it on appeal if it did not raise the issue previously. Id.; see Hingham v. Department of Telecomm. & Energy, 433 Mass. 198 , 215-216 (2001); Warren v. Board of Appeals of Amherst, 383 Mass. 1 , 8-9 (1981) (declining to hear nonjurisdictional argument not raised before the zoning board). 





 HD/MW argues that the Board waived the ROTC argument because it did not make that argument to HAC. In response, the Board points to its Post-Hearing Brief to HAC. A.R. 4191-4273. In particular, the Board points to the following portion of its Post-Hearing Brief as its argument on the ROTC issue: 





 HD/MW's expert, Robert Engler, testified in his Pre-Filed Testimony that the 90- unit project as proposed is economically infeasible and uneconomic, because the minimum threshold of an economic project is a return on total costs of 6.84%. Thus, the 5.93% return is 0.91% below the threshold, but "slightly higher" than the 5.88% when the project was originally submitted for site approval in 2014. Exhibit 85, ¶¶13, 14. Based upon Mr. Engler's calculations, and the Board does not admit that Mr. Engler's calculations are based upon accurate assumptions, the thirty-five unit project the Board permitted will yield a return of 4.13% or 2.71% less than the threshold.[] Id., ¶22. This is a return which is only 1.8% below the 90-unit development's return. It is a stretch to go from calling a 0.91% difference a "slight" change to calling a 1.8% change (ie. another 0.89%) a "significant" one. 





A.R. 4271-4272. 





 While this argument does refer to the "return on total costs," it uses the ROTC only to argue that any reduction in economic return as a result of the Board's conditions is not significant. It is not an argument that because the Project did not meet the minimum ROTC, it was already uneconomic and therefore the conditions could not render the Project uneconomic. This particular argument about the ROTC was never made to HAC, and is therefore waived. Albert, 388 Mass. at 493-494. 





 III. ROTC 





 Notwithstanding the Board's waiver, the court addresses the ROTC argument in the interest of completeness. As discussed above, DHDC guidelines have defined a minimum ROTC. The minimum ROTC is used as a measure for whether conditions in an approval render a project uneconomic. The guidelines provide that if the conditions cause the ROTC of a project to fall below the minimum ROTC, then by definition the conditions render the project uneconomic. A.R. 741-742. 





 At the time the Project was initially presented to the Board, its ROTC was below the minimum ROTC. A.R. 2768. This means that HAC could not rely on the minimum ROTC as a measure of whether the Board's conditions rendered the Project uneconomic: since the Project was already below the minimum ROTC, HD/MW could not demonstrate that the conditions made the ROTC fall below that minimum. A.R. 4410. Instead, HAC applied a different standard for whether the conditions rendered the project uneconomic. HAC applied the standard that HD/MW had to show that the Board's conditions rendered the project "significantly more uneconomic than the project proposed in the developer's application for a comprehensive permit." Id. 





 The Board argues that this "significantly more uneconomic" standard was the creation of HAC and was beyond its statutory authority, because HAC was obligated to follow the DHCD guidelines, and by those guidelines, the Project was already uneconomic. The Board's argument is in error. Under G.L. c. 23B, § 5A, HAC is required to "conduct [...] hearings in accordance with rules and regulations established by [DHCD.]" There are no DHCD rules and regulations defining what constitutes rendering a project "uneconomic" under G.L. c. 40B, § 22. The DHCD guidelines are not "rules and regulations established by" DHCD. They are what they say they are: guidelines, intended to serve as a supplement in interpreting G.L. c. 40B and the applicable regulations. In any conflict between the terms in the DHCD guidelines and either c. 40B or the regulations, the latter control. A.R. 739. Therefore, HAC has discretion not only to follow the guidelines, but also to adopt "policies through adjudication as well as through rulemaking" when those guidelines do not help the agency determine when conditions render a project uneconomic. Board of Appeals of Woburn, 451 Mass. at 593. Such discretion includes applying the standard of a project being rendered "significantly more uneconomic" by a board's conditions. Id. at 592- 593. The application of the ROTC calculation for the percentage at which a project becomes "uneconomic" is not compulsory; rather, the ROTC methodology serves as one way of calculating whether conditions rendered a project uneconomic. It is not the only way, and it does not supplant the statutory standard. 





 Even though the Project's ROTC is below the minimum ROTC, it is still profitable; it was determined to be profitable by DHCD when DHCD issued the project eligibility letter. 760 CMR 56.04. That determination was conclusive evidence that the Project satisfied eligibility requirements and was an irrebuttable presumption before the Board and HAC. 760 CMR 56.04(6), 56.07(3)(a). Thus, HAC, when asked to determine if the Project was rendered uneconomic by the Board's conditions, could reasonably look at the Project's ROTC and determine if the reduction in ROTC, if any, made the Project significantly more uneconomic. In reviewing HAC's decision, a reviewing court "must apply all rational presumptions in favor of the validity of the administrative action." Middleborough, 449 Mass. at 524, quoting Wellesley, 385 Mass. at 654. HAC's use of the "significantly more uneconomic" standard to determine if the conditions of the comprehensive permit rendered the Project uneconomic is within its discretion. 





 IV. Three Bedroom Units 





 The Board also challenges HAC's alternative grounds for finding that the Project was rendered uneconomic: that the comprehensive permit's ban on three-bedroom units rendered the Project uneconomic by prohibiting final approval from the subsidizing agency, MassHousing. A.R. 4416-18. The Board argues that it did not, in fact, ban three-bedroom units and that it made this clear to HAC. A.R. 3758-59; 4418. HAC based its conclusion that the Board prohibited the inclusion of three-bedroom units on Condition 2 of the comprehensive permit that explicitly mentions "one-bedroom" and "two-bedroom" units but not three-bedroom units. A.R. 2608.





 HAC heard both parties and exercised its proper authority in reaching the conclusion that the Board's exclusion of language on three-bedroom units was effectively a ban on them. Further, HAC was within its authority in finding that this ban would render the Project uneconomic by causing the subsidizing agency to not fund the Project. A.R. 4418. HAC did not overreach its statutory authority and the court must thus "apply all rational presumptions" in favor of the validity of this decision. Wellesley, 385 Mass. at 654. 





 V. Validity of Local Concerns 





 The court next turns to HAC's striking and modification of various conditions in the comprehensive permit. The court must uphold HAC's decision on the conditions where it is supported by substantial evidence. Wellesley, 385 Mass. at 657. In evaluating two fairly conflicting views, "the court may not displace an administrative board's choice [...] even though the court would justifiably have made a different choice had the matter been before it de novo." Id., quoting Labor Relations Comm'n v. University Hosp., Inc., 359 Mass. 516 , 521 (1971). 





 a. Fire and Safety Access Conditions 





 The Board first pushes back against HAC's modification of the comprehensive permit's conditions related to fire safety and emergency access, namely Conditions 2, 6, and 28. In response to these safety and emergency access concerns, HAC imposed two new conditions: 





 1) Requiring HD/MW to include a vehicle turnaround location that meets the Town's turning radius specifications for the largest emergency vehicle; and 





 2) Requiring HD/MW to provide a paved area for the placement of fire vehicles during an emergency approach on the southerly side of Building 2. 





A.R. 4428-4430. The Board argues that in imposing these conditions as opposed to the ones initially imposed by the Board, HAC had no evidence before it that these conditions were practicable. This assertion is contrary to the record as HAC took into account evidence from both parties on this matter. Indeed, the Board, in objecting to the second requirement of a paved area, could not demonstrate a lack of substantial evidence that there is space (outside of wetlands) on the southerly side of Building 2 for the requisite paved area. Board's Memorandum at 27. In light of the substantial evidence presented, the court may not displace HAC's decision on this matter. See A.R. 2802-2811; 2814-2815; 2841-2843; 4424-4430. 





 The Board next turns to the decision's modifications to Conditions 2, 5, 6, 10, 11, 22, 23, and 25 of the comprehensive permit as they relate to site and building designs. The Board argues that HAC improperly dismissed these conditions as concerns that could not be a basis for comprehensive permit conditions. The Board points to language from 56 CMR § 56.02 that includes "site and building design" in the definition of "Local Concern." In evaluating these conditions, HAC found that the Board failed to meet its burden in establishing its conditions as reflecting valid local concerns or that the concerns presented did not outweigh the need for affordable housing. See A.R. 4432 (striking Condition 22); 4437 (striking Condition 11); 4447 (striking Condition 5 and modifying Condition 25); 4451-52 (striking Condition 6 and modifying Condition 2); 4454-55 (striking Condition 23). HAC cited substantial evidence in reaching these conclusions. See A.R. 4431-32; 4436-37; 4444-47; 4451-52; 4454-55. Given the weight of the evidence HAC considered in making this decision, the court cannot displace this decision. 





 With respect to Condition 10, the Board argues in its Memorandum that Condition 10 was struck unlawfully. Board Memorandum at 31. While Conditions 10(a) and 10(b) were modified to "allow building construction activity in the wetlands and the non-disturbance zone to the extent necessary to construct and maintain the access driveway and replication area," and waived Chapter 15 and § IV.B of the Milton Wetland Bylaw (A.R. 4439-40), Condition 10(c), which addresses the stormwater concerns the Board complains of, was left intact, with an added condition: "HD/MW's revised stormwater management plans shall show the means by which the diversion of stormwater away from the Carlin property is managed." A.R. 4443. Since HAC's decision retains the portion of Condition 10 addressing stormwater concerns, the Board's argument with respect to Condition 10 is disregarded, and that portion of the decision is affirmed. 





 b. Long-Term Affordability Conditions 





 The Board argues that HAC's striking of Conditions 18 and 19 of the comprehensive permit constitutes a reversible error. Condition 18 required that HD/MW execute a Permanent Restriction/ Regulatory Agreement, prior to issuance of a building permit, that: 





 (i) Shall only become effective if and when the Regulatory Agreement with the subsidizing agency is terminated, expires or is otherwise no longer in effect and is not replaced with another regulatory agreement with another subsidizing agency; 





 (ii) Shall require that at least twenty five (25%) percent of the apartments in the project shall be rented in perpetuity to low and moderate income households as that term is defined in M.G.L Chapter 40B, Sections 20-23; and 





 (iii) Shall in no event contain any provisions restricting or limiting the dividend or profit of the Applicant. 





A.R. 2610. Condition 19 provided that the Town would monitor the enforcement of Condition 18 and that HD/MW would provide the Town with a "reasonable monitoring fee." Id. 





 In making the argument that the striking of these conditions constitutes a reversible error, the Board highlights the principle that "a party to a proceeding before a regulatory agency [...] has a right to expect and obtain reasoned consistency in the agency's decisions." Boston Gas Co. v. Department of Pub. Utils., 367 Mass. 92 , 104 (1975). While "[t]his does not mean that every decision of the Department in a particular proceeding becomes irreversible in the manner of judicial decisions constituting res judicata, . . . neither does it mean that the same issue arising as to the same party is subject to decision according to the whim or caprice of the Department every time it is presented." Id. at 104. This "reasoned consistency" requires only "that any change from an established pattern of conduct must be explained." Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd., 448 Mass. 45 , 56 (2006), quoting Robinson v. Department of Pub. Utils., 416 Mass. 668 , 673 (1993). 





 To buttress its argument, the Board points to past HAC decisions where similar conditions were upheld. In Archstone Communities Trust v. Woburn Bd. of Appeals, HAC upheld a condition that required a permanent restriction on affordability. HAC No. 01-07, 2003 WL 25338645, at *37-38 (June 11, 2003). In Lexington Ridge Assocs. v. Lexington Bd. of Appeals, HAC No. 90-13, 1992 WL 12562138 (1992), HAC upheld a perpetual affordability condition as being consistent with local needs, after the developer objected that it had been treated differently from other projects in the town. Id. at *11-12, 24-25. 





 The Board also highlights the policy behind the enabling statute as described by the SJC: 





 If housing developed under a comprehensive permit is 'affordable' only temporarily [...], a city or town may never achieve the long-term statutory goals: each time an affordable housing project reverts to market rentals, the percentage of low income housing units in a municipality decreases, the percentage of market rate units increases, and access to a new round of comprehensive permits is triggered. 





Zoning Bd. of Appeals of Wellesley v. Ardemore Apartments L.P., 436 Mass. 811 , 824 (2002) ("Wellesley II"). It is important to note the court in that case was not analyzing the validity of a similar condition, but instead highlighting the requirement that a comprehensive permit must maintain an affordability requirement so long as the project does not comply with local zoning. Id. at 813, 825. 





 For its part, HD/MW argues that HAC's decision to strike the conditions was supported by substantial evidence and was consistent with the law. A.R. 4458-59; 4335-36. HAC, in its decision, cited the Board's lack of adequate briefing on the issue of the responsibility of the subsidizing agency and the role of DHCD in maintaining the affordability obligations. HAC also pointed towards the Board's possible impingement on the regulatory responsibilities of the subsidizing agency and its lack of evidence regarding either MassHousing or DHCD's position on this sort of assertion of local control of the program. Attitash Views, LLC v. Amesbury Zoning Bd. of Appeals, HAC No. 06-17, 2007 WL 3102184 at *6-8 (Oct. 15, 2007). Lastly, HAC emphasized its past denial of conditions requiring future review and approval by a board. A.R. 4459. 





 In challenging HAC's modification or striking of these conditions of the comprehensive permit, the Board first had the burden of proving that the conditions were supported by a valid local concern. The Board then had the burden of proving that this concern outweighed the regional need for low and moderate income housing. 760 CMR 56.07(1)(c), 56.07(2)(b)3. Since the Town of Milton does not meet the statutory minimum regarding affordable housing, a rebuttable presumption is established that a substantial regional housing need outweighs the local concern. 760 CMR 56.07(3)(a); see Zoning Bd. of Appeals of Lunenburg v. Housing Appeals Comm., 464 Mass. 38 , 42 (2013). 





 In reviewing HAC's decision under G.L. c. 30A, § 14(7)(g), the court may set aside or modify the decision if "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." As discussed, a party "proceeding before [an administrative agency] ... has a right to expect and obtain reasoned consistency in the agency's decisions." Boston Gas Co., 367 Mass. at 104. Reasoned consistency means that any departure from "an established pattern of conduct" requires adequate explanation from the administrative agency. Alliance to Protect Nantucket Sound, Inc., 448 Mass. at 56. 





 In striking Condition 18 and departing from its past decisions, HAC did not provide the adequate explanation required when an agency departs from "an established pattern of conduct." Id. While HAC did raise valid concerns about the Board impinging on the jurisdiction of DHCD, see G.L. c. 184, § 32, and MassHousing, HAC did not explain why those concerns did not cause it to strike similar restrictions in past cases. HAC's striking of Conditions 18 and 19 was arbitrary and capricious. In determining the validity of a local concern, HAC is tasked with weighing whether the Town's concern outweighs the need for low and moderate income housing. 760 CMR 56.07(1)(c), 56.07(2)(b)3. The Board's concern in imposing Conditions 18 and 19 was ensuring the longevity of the affordability of these units. In accordance with the Wellesley II decision, the Board sought to ensure that as long as the Project was nonconforming, it would remain affordable. While HAC argues that Wellesley II, in its holding, already guarantees that the units must remain affordable so long as the project remains noncompliant with zoning, it is still permissible for the comprehensive permit to guarantee future affordability in the event that Wellesley II is overturned. In Archstone Communities Trust, HAC cited Wellesley II specifically in upholding a perpetual affordability condition. 2003 WL at 38. To strike these conditions on the grounds that the Board didn't seek the input of MassHousing or DHCD rises to the level of an arbitrary and capricious decision and is therefore a reversible error. 





 The conditions the Board imposed with regard to long-term affordability are only distinguishable from similar conditions upheld by HAC insofar as the Board included a requirement that HD/MW pay the Town of Milton an undetermined fee for the service of monitoring the affordability requirements. HAC struck Conditions 18 and 19 on the grounds that the Board provided no evidence regarding MassHousing's position with regard to this condition and that the Board was imposing conditions that were instead within the province of the subsidizing agency. Because of this, HAC never reached the issue of the validity of the monitoring fee. Under G. L. c. 30A, § 14(7), a reviewing court may remand the matter to the agency for further proceedings, especially in the absence of "sufficient subsidiary findings to demonstrate that correct legal principles were applied." Norfolk County Retirement Sys. v. Director of Dep't of Labor and Workforce Dev., 66 Mass. App. Ct. 759 , 770 (2006) (internal citation omitted). That is the situation here. While the rest of HAC's decision will be affirmed, the portion of the decision relating to Conditions 18 and 19 must be annulled, and the question of the validity of Conditions 18 and 19 remanded to HAC. On remand, the Board and HD/MW may present further evidence and briefing on Conditions 18 and 19, and HAC will then make the necessary subsidiary findings with respect to the validity of the long-term affordability and monitoring fee requirements of those conditions. 





Conclusion 





 For the foregoing reasons, the Board MJOP is DENIED in part and ALLOWED in part, and the HD/MW MJOP and HAC MJOP are ALLOWED in part and DENIED in part. The decision of HAC with respect to Conditions 18 and 19 (A.R. 4458-4459) is ANNULLED and remanded to HAC for further proceedings to reconsider said Conditions, particularly on whether the local concerns of the Board outweigh the regional need for low and moderate income housing, consistent with this Memorandum and Order. The remainder of HAC's decision is AFFIRMED. Judgment shall enter accordingly. 





FOOTNOTES
[Note 1] The complaint in Superior Court case no. 1982CV00079 was filed January 18, 2019 (the Superior Court case). The Land Court judge (Foster, J.) was interdepartmentally assigned as a judge of the Superior Court to hear the Superior Court case by an Order of Assignment dated May 1, 2019. A Stipulation of Dismissal of the Superior Court case was filed October 19, 2019. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.